T.C. Memo. 2002-3

UNITED STATES TAX COURT

WALTHER GUERRIER, JR., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4512-01L.                    Filed January 7, 2002.

Walther Guerrier, Jr., pro se.

Rosemarie D. Camacho and Lewis J. Abrahams, for respondent.

MEMORANDUM OPINION

CHIECHI, Judge:  This case is before us on petitioner's motion to dismiss for lack of jurisdiction (petitioner's motion) and respondent's motion to dismiss for lack of jurisdiction (respondent's motion).  The Court held a hearing on each of those motions.  We shall deny petitioner's motion and grant respondent's motion.

Background

The record establishes and/or the parties do not dispute the following:

At the time the petition for lien or levy action under section 6320(c) or 6330(d)[1] was filed, petitioner resided in Far Rockaway, New York.

Respondent's transcripts for petitioner's taxable years 1994 and 1996 indicate that he did not file a Federal income tax return (return) for either of those years and that respondent prepared a substitute for return for each such year. On a date not disclosed by the record, respondent mailed to petitioner a notice of deficiency (notice) with respect to his taxable years 1994 and 1996. The U.S. Postal Service (Postal Service) returned that notice to respondent because petitioner no longer resided at the address for petitioner shown on the envelope in which the notice was mailed and petitioner's request to the Postal Service to forward his mail to a new address had expired.

On October 11, 1999, respondent assessed the Federal income tax (tax) due for each of the petitioner's taxable years 1994 and 1996, as shown in the substitute for return for each such year that respondent had prepared, and issued notices and demands for payment of such taxes.

---

[1]All section references are to sections of the Internal Revenue Code in effect at all relevant times. All Rule references are to the Tax Court Rules of Practice and Procedure.

On May 3, 2000, respondent issued to petitioner a notice of intent to levy with respect to his assessed tax liability for each of the years 1994 and 1996 (notice of intent to levy).

On June 1, 2000, petitioner timely filed Form 12153, Request for a Collection Due Process Hearing (request for Appeals Office hearing), with respect to the notice of intent to levy. In an attachment to the request for Appeals Office hearing, petitioner stated in pertinent part:

> I am "challenging the appropriateness of (the) collection action" as specified in [section]6330(c)(2)(A)(ii) since the IRS denied all of my requests for the initial "examinations" and "interviews" as provided for in Publications 1 & 5. In addition, no lien for taxes pursuant to Code Sections 6321 and 6322 is possible because no valid, underlying assessment was ever made. In addition, I never received the statutory "notice and demand" for payment of the taxes at issue as required by Code Sections 6203, 6321, and 6331. If the appeals officer is going to claim that a particular document sent to me by the IRS was a "Notice and Demand" for payment, then I am requesting that he also provide me with a T.D. or Treas. Reg. which identifies that specific document as being the official, statutory "Notice and Demand" for payment.
>
> In addition, I am "challenging the existence of the underlying tax liability" as I am authorized to do in Code Section 6330(c)(2)(B). In addition, I did not receive a (valid) notice of deficiency in connection with any of the years at issue. I am also requesting that the appeals officer have at the "Due Process Hearing" a copy of the "Summary Record of Assessment" (Form 23 C) together with the "pertinent parts of the assessment which set forth the name of the taxpayer, the date of the assessment, the character of the liability assessed, the taxable period, and the amount assessed" as provided for in Treas. Reg. [section] 301.6203-1.
>
> In addition, I want to see proof that a purported

"Deficiency Notice" was actually sent to me. Also, since Section 6330(c)(1) requires that "The appeals officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met," I am requesting that the Appeals Officer have such verification with him at the Appeals Conference. However, if the verification called for by [section] 6330(c)(1) is signed by someone other than the Secretary himself, than [sic] - in line with the Supreme Court's holding in Federal Crop Ins. Corp. v. Merril, 92 L.Ed. 11 - I am requesting that the Appeals officer also have a Delegation Order from the Secretary delegating to that person the authority to prepare such a "verification."

In response to petitioner's request for Appeals Office hearing, on January 10, 2001, Appeals Officer Carol Berger (Appeals Officer), who at that time was with respondent's Appeals Office in New York City, sent a letter (Appeals Officer's January 10, 2001 letter) to petitioner, in which she scheduled an Appeals Office hearing on February 12, 2001. In the Appeals Officer's January 10, 2001 letter, the Appeals Officer asked petitioner to bring to the scheduled Appeals Office hearing a completed return for each of the years 1994 and 1996, as well as any other documents pertaining to petitioner's tax liability for each of those years. The Appeals Officer made that request to petitioner because any such returns and documents might have served as a means of reducing or eliminating the amount of petitioner's respective tax liabilities for 1994 and 1996 that respondent had assessed against him.

On February 12, 2001, petitioner attended an Appeals Office hearing with the Appeals Officer with respect to the notice of

intent to levy regarding petitioner's tax liabilities for 1994 and 1996 (February 12, 2001 Appeals Office hearing). At that hearing, petitioner showed the Appeals Officer Form 1040A, U.S. Individual Income Tax Return (Form 1040A), that he had prepared for each of his taxable years 1994 and 1996. Petitioner's signature appeared on each of those forms. Next to petitioner's signature in Form 1040A for 1994 was the date May 3, 2000. Next to petitioner's signature in the Form 1040A for 1996 was the date April 1, 2000. In Form 1040A for each of the years 1994 and 1996, petitioner (1) reported $0 of wage or any other income, (2) claimed no deductions or exemptions, and (3) requested a refund in an amount equal to the total tax that he claimed was withheld for each of those years. Attached to Form 1040A for each of petitioner's taxable years 1994 and 1996 was a two-page document. That document stated in part:

> I, Walther Guerrier, Jr., am submitting this as part of my * * * return, even though I know that no section of the Internal Revenue Code:
>
> 1) Establishes an income tax "liability" as, for example, Code Sections 4401, 5005, and 5703 do with respect to wagering, alcohol, and tobacco taxes;
>
> 2) Provides that income taxes "have to be paid on the basis of a return" as, for example, Code Sections 4374, 4401(c), 5061(a) and 5703(b) do with respect to other taxes; I am filing anyway because I know the government has prosecuted others for failing to file income tax returns by (erroneously) invoking Code Sections 7201 and 7203. Therefore, this return is not being filed voluntarily, but is being filed out of fear that if I did not file this return I could also be (illegally) prosecuted for failing to file income tax return * * *.

3) In addition to the above, I am filing even though the "Privacy Act Notice" as contained in a 1040 booklet clearly informs me that I am not required to file. It does so in at least two places.

   a) In one place, it states that I need only file a return for "any tax" I may be "liable" for. Since no Code Section makes me "liable" for income taxes, this provision notifies me that I do not have to file an income tax return.

   b) In another place, it directs me to Code Section 6001. This section provides, in relevant part, that "Whenever in the judgment of the Secretary it is necessary, he may require any person <u>by notice served on such person</u> or by regulations, to make such returns, render such statements, or keep such records, as the Secretary deems sufficient to show whether or not such person is liable for tax under this title." Since the Secretary of the Treasury did not "serve" me with any such "notice" and since no legislative regulation exists requiring anyone to file an income tax return, I am again informed by the "Privacy Act Notice" that I am not required to file an income tax return.

4) With respect to the information I included in my return, I wish to point out that the courts have ruled that: "A (1040) form with 'zeros' inserted in the space provided * * * qualified as a return." * * *

   *      *      *      *      *      *      *

6) It should also be noted that I had "zero" income according to the Supreme Court's definition of income * * * since in <u>Merchant's Loan & Trust C. V. Smietanka</u>, 255 U.S. 509 (at pages 518 & 519) that court held that "The word (income) must be given the same meaning in all the Income Tax Acts of Congress that was given to it in the Corporation Excise Tax Act of 1909." Therefore, since I had no earnings * * * that would have been taxable as "income" under the Corporation Excise Tax Act of 1909, I can only swear to having "zero" income * * *. Obviously, since I know the legal definition of "income," if I were to swear to having received any other amount of "income," I would be committing perjury * * *. Therefore, not wishing to commit

perjury * * *, I can only swear to having "zero" income * * *.

In addition to the foregoing contentions and arguments of petitioner that appeared in the two-page document that he attached to each of the Forms 1040A for 1994 and 1996 that he prepared, petitioner advanced additional contentions and arguments in that document, all of which the Court finds to be groundless and frivolous.

At the February 12, 2001 Appeals Office hearing, petitioner informed the Appeals Officer that he had filed returns for each of the years 1994 and 1996 and that he had received a notice from respondent in which respondent indicated that respondent considered each of those returns to be frivolous.

At the February 12, 2001 Appeals Office hearing, the Appeals Officer attempted to discuss with petitioner the amount of tax that he owed for each of the years 1994 and 1996 and the proper way to prepare Form 1040 for each of those years. Petitioner did not provide the Appeals Officer with a return for each of the years 1994 and 1996, in which he reported his wage and any other income and claimed deductions or a filing status different from that shown in the substitute for return that respondent prepared for each of those years. If he had, the Appeals Officer would have sent such returns and any other information that petitioner provided to her to respondent's examination division for review in order to determine whether petitioner's tax liability for each

of the years 1994 and 1996 should be reduced from the respective tax liabilities for those years which respondent had computed and assessed and to which the notice of intent to levy pertained.

At the February 12, 2001 Appeals Office hearing, the Appeals Officer attempted to explain to petitioner respondent's basis for the tax assessment against him for each of the years 1994 and 1996. The Appeals Officer explained to petitioner that respondent calculated his tax liability for each of the years 1994 and 1996 by preparing a substitute for return for each of those years on the basis of the information reflected in Form W-2, Wage and Tax Statement (Form W-2), and Form 1099 that certain payors issued to petitioner for each of those years. The Appeals Officer further explained to petitioner that, in preparing each such substitute for return in order to arrive at petitioner's tax liability for each of the years 1994 and 1996, respondent determined petitioner's tax bracket and the amount of tax due and subtracted any credits to which he was entitled.

Petitioner did not want to discuss at the February 12, 2001 Appeals Office hearing the amount of tax that he owed for each of the years 1994 and 1996 or the proper way in which to prepare Form 1040 for each of those years. Nor did petitioner wish to discuss collection alternatives at the February 12, 2001 Appeals Office hearing.

At the February 12, 2001 Appeals Office hearing, petitioner

advised the Appeals Officer that he did not believe that wages are income.[2] At that hearing, petitioner raised various matters with the Appeals Officer relating to why he had to pay tax, why he had to file a return, who had the authority to sign a notice of deficiency, and what provision of the law made him liable for tax.

At the conclusion of the February 12, 2001 Appeals Office hearing, the Appeals Officer advised petitioner that she intended to sustain the proposed levy action and that he would have the right to appeal her decision to this Court.

On February 21, 2001, respondent's Appeals Office sent petitioner a "NOTICE OF DETERMINATION CONCERNING COLLECTION ACTION(S) UNDER SECTION 6320 and/or 6330" with respect to his taxable years 1994 and 1996 (notice of determination). The notice of determination stated in pertinent part: "If you want to dispute this determination in court, you must file a petition with the United States Tax Court for a redetermination within 30 days from the date of this letter."

On April 2, 2001, petitioner filed a petition in response to the notice of determination. That petition was mailed to the

---

[2]At the hearing that the Court held on petitioner's motion, petitioner conceded that he received Form W-2 for each of the years 1994 and 1996 and that each of those forms correctly reflected the amount of wages that he received during each of those years. According to petitioner, Form 1040A that he prepared for each of the years 1994 and 1996 reported $0 of wage income because wages are not income.

Court via Postal Service Express Mail.  The Postal Service postmark for that mailing bore the date March 31, 2001.

Discussion

Petitioner's Motion

In petitioner's motion, petitioner asks the Court to dismiss this case for lack of jurisdiction on the ground that the notice of determination is invalid because he did not have an Appeals Office hearing.  In addition to petitioner's motion, petitioner filed a document entitled "MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION TO DISMISS FOR LACK OF JURISDICTION" (petitioner's memorandum).  We believe that petitioner's memorandum is a document that was used in another context and that it is not pertinent or relevant to the instant case.  By way of illustration, petitioner's memorandum refers consistently throughout to petitioner as being a woman, and not a man.[3]  In addition, petitioner's memorandum identifies respondent's Appeals Officer who

---

[3]For example, petitioner's memorandum states in pertinent part:

> Petitioner refused to waive <u>her</u> right to the CDP hearing referred to over and over again in both the law and its implementing regulation.  In addition, Petitioner expected <u>her</u> daughter (to whom <u>she</u> had given <u>her</u> power of attorney) to represent <u>her</u> at the hearing since <u>her</u> daughter is far more articulate then [sic] is petitioner, and she also has a greater understanding of the laws at issue. * * * Petitioner also wanted a court reporter present at <u>her</u> hearing, so <u>she</u> would have an official transcript to support any Petition <u>she</u> might subsequently file with the Tax Court to contest any adverse CDP determination. * * *  [Emphasis added.]

held the hearing with petitioner as "Jose Gonzales", and not Carol Berger.  Petitioner's memorandum also indicates that "Petitioner has an anxiety disorder and suffers from depression and so could not effectively represent herself at a CDP 'hearing,' especially an ersatz one, conducted over the telephone." Appeals Officer Carol Berger held a face-to-face hearing, and not a hearing conducted over the telephone, with petitioner on February 12, 2001.  Moreover, there is no suggestion in the record that petitioner was suffering from any kind of anxiety disorder or depression at that hearing.[4]  A final illustration that petitioner's memorandum is a document that was used in another context and that is not pertinent or relevant to the instant case is the reference in that memorandum to taxable years that are not involved in the instant case and to other information that is inapplicable to this case.

At the Court's hearing on petitioner's motion, petitioner testified that he did not have an Appeals Office hearing.  In support of that position, petitioner further testified that the Appeals Officer did not discuss with him the issues that he wanted to raise, such as what law makes him liable for tax, how respondent calculated his tax liability for each of the years 1994 and 1996, and similar matters.

---

[4]At the Court's hearing on petitioner's motion, petitioner did not appear to the Court to have any kind of disorder whatsoever, whether due to anxiety, depression, or any other cause.

We recently held that, in determining the validity of a notice of determination for jurisdictional purposes, we shall not look behind such a notice in order to ascertain whether the taxpayer was afforded an appropriate hearing with respondent's Appeals Office.[5]  Lunsford v. Commissioner, 117 T.C. ___ (2001).  In so holding in Lunsford, we overruled Meyer v. Commissioner, 115 T.C. 417 (2000), to the extent that it required the Court to look behind a notice of determination to ascertain whether a proper hearing opportunity was given in order to decide whether such a notice was valid.  Lunsford v. Commissioner, supra.

In the instant case, we are not required to look behind the notice of determination in order to determine the validity of that notice.  Id.  Without looking behind the notice of determination in the instant case, we find on the record before us that that notice is facially valid.  We shall deny petitioner's motion.

Respondent's Motion

In respondent's motion, respondent asks the Court to dismiss

_____

[5]Although under Lunsford v. Commissioner, 117 T.C. ___ (2001), we shall not look behind a notice of determination in order to ascertain whether the taxpayer was afforded an appropriate hearing with respondent's Appeals Office, on the record before us, we reject petitioner's contention that the Appeals Office did not hold the hearing to which he was entitled under sec. 6330(b)(1).  On that record, we find that on Feb. 12, 2001, the Appeals Office held the hearing with petitioner that sec. 6330(b)(1) requires and allowed petitioner to raise at that hearing relevant issues relating to the proposed levy for each of his taxable years 1994 and 1996.

this case for lack of jurisdiction on the ground that petitioner filed the petition in this case after the 30-day period pre-scribed by section 6330(d). Petitioner does not dispute that his petition in response to the notice of determination was mailed via Postal Service Express Mail on March 31, 2001, or that the petition was filed on April 2, 2001, both of which dates exceed the 30-day period prescribed by section 6330(d). Instead, petitioner argues that respondent's motion should be denied because it was not clear to him whether, in calculating the 30-day period prescribed by section 6330(d), the days to which that section refers and to which the notice of determination refers are calendar days or business days.

We conclude that the 30 days provided in section 6330(d) for timely filing a petition in the Tax Court with respect to a determination under section 6330 (and section 6320) are 30 calendar days, and not 30 business days. See McGuire v. Commissioner, 52 T.C. 468 (1969). On the record before us, we find that petitioner was required to file a petition in response to the notice of determination on or before March 23, 2001, which was not a Saturday, a Sunday, or a legal holiday in the District of Columbia and which is 30 calendar days after February 21, 2001, the date on which respondent issued the notice of determination. See sec. 6330(d); see also Rule 25. Petitioner filed

the petition in this case on April 2, 2001.[6]  On the instant record, we find that petitioner did not file the petition within the 30-day period prescribed by section 6330(d).  We shall grant respondent's motion.

An appropriate order denying petitioner's motion and granting respondent's motion will be entered.

---

[6]Petitioner is not considered to have filed the petition on Mar. 31, 2001, the date of the Postal Service postmark on the envelope in which he mailed his petition to the Court.  That is because Mar. 31, 2001, does not fall within the 30-day period prescribed by sec. 6330(d).  See sec. 7502(a)(1) and (2)(A).