T.C. Memo. 2004-124

UNITED STATES TAX COURT

MICHAEL STEIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10970-01L.                    Filed May 24, 2004.

Michael Stein, pro se.

<u>John Aletta</u>, for respondent.

MEMORANDUM OPINION

BEGHE, <u>Judge</u>:  Petitioner failed to file timely Federal

income tax returns for 1992, 1993, and 1994.  Respondent filed

"substitutes for return"[1] (SFRs) for those years, mailed

---

[1]The Commissioner has previously represented to this Court
that the term "substitute for return" (SFR) is a term used by the
Commissioner for returns or partial returns prepared by the
                                              (continued...)

petitioner statutory notices of deficiency to which he never responded, and thereafter assessed income tax liabilities against petitioner for those years.

As of March 8, 1999, petitioner's total unpaid tax liabilities for the above-mentioned years, including the unpaid assessed income tax liabilities, and additions to tax and interest, were as follows:

| Year | Unpaid Assessments | Additions to Tax and/or Interest | Total Unpaid Liabilities |
|------|------|------|------|
| 1992 | $1,344.17 | $1,068.95 | $2,413.12 |
| 1993 | 5,505.15 | 1,910.12 | 7,415.27 |
| 1994 | 197,079.49 | 63,903.26 | 260,982.75 |

On February 23, 2000, respondent filed a notice of Federal tax lien (NFTL) against petitioner's real property with respect to $203,928.81, the then-unpaid balance of petitioner's 1992 through 1994 tax liabilities. On July 26, 2001, respondent issued petitioner a notice of determination concerning collection

---

[1](...continued)
Commissioner where the taxpayer did not file a return. See Swanson v. Commissioner, 121 T.C. 111, 112 n.1 (2003). The term "SFR" has also been used to describe a return prepared by the Commissioner under sec. 6020(b). There is no record evidence to prove or disprove respondent's assertion in his brief that the substitutes for return in this case meet the requirements of sec. 6020(b). For convenience, we refer to the returns prepared by respondent as SFRs.

action(s) under section 6320 and/or 6330,[2] which upheld respondent's NFTL.[3]

The issues for decision presented by petitioner's timely filed petition with this Court are:

1. Whether petitioner is liable for the deficiencies assessed by respondent. We hold petitioner is liable for the deficiencies because petitioner has not satisfied the conditions that would entitle him in this proceeding to contest respondent's deficiency determinations or assessments; and

2. whether respondent abused his discretion in sustaining the filing of the Federal tax lien against petitioner's property to secure petitioner's outstanding income tax liabilities for tax years 1992 through 1994. We hold respondent did not abuse his discretion in so doing.

_____

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3]On Mar. 8, 1999, respondent sent petitioner a final notice of intent to levy and notice of the right to a hearing with respect to his total unpaid tax liabilities; petitioner did not file a timely request for a sec. 6330 hearing. After an equivalent hearing, respondent upheld the proposed levy. We do not have jurisdiction to consider the proposed levy. See infra p. 16. However, because petitioner has conflated the lien and levy issues and made some of the same arguments with respect to both of them, we sometimes refer to the proposed levy in considering petitioner's arguments against the lien.

Procedural Background

This case was tried in Hartford, Connecticut, on January 6, 2003. Respondent's opening brief was due April 7, 2003, and petitioner's answering brief was due June 5, 2003. On April 7, 2003, respondent filed his brief with the Court.

Petitioner filed five motions for extension of time to file his answering brief. These motions included three requests for extensions to obtain and review the trial transcript, a fourth request for extension because he did not receive notice of the granting of the request for the third extension until 2 days before the third extended due date, and a fifth request for extension pending adjudication of certain motions that petitioner stated "are concurrently being submitted to the Court in separate envelopes" but have never been received by the Court. The Court granted the first four of these motions, thereby extending the due date of petitioner's brief from June 5 to November 20, 2003.

The Court's order of November 5, 2003, denying petitioner's fifth motion filed November 3, 2003, was served by certified mail on petitioner at his specified mailing address, P.O. Box 210, Greenwich, Connecticut (the post office box address), and was returned unclaimed on November 28, 2003. Petitioner did not notify the Court of any change of his mailing address. On January 20, 2004, the Court ordered that a copy of the

November 5, 2003, order be served on petitioner at the post office box address by certified mail and regular mail.

On March 10, 2004, the Court ordered petitioner and respondent to file, on or before March 22, 2004, a joint status report or separate status reports indicating whether and when petitioner filed Federal income tax returns for 1992 through 1994, and, if so, whether, notwithstanding the outstanding assessments and the lien controversy in the case at hand, respondent was examining those returns. Respondent's status report, filed March 19, 2004, indicated that petitioner had not filed the returns, and that, therefore, respondent was not in the process of examining them.

On April 6, 2004, petitioner filed a status report requesting an extension to file his brief and the motions he intended to file with his last extension request (but which he claimed to have failed by inadvertence to file). In this status report, petitioner asserted that "severe health problems" and his preoccupation with separate litigation as "a pro se defendant" had caused the delays in filing his brief and the motions. According to petitioner, the separate litigation involved "a dispute over fines imposed on petitioner by a condominium association" that had led to foreclosure litigation "involving the same condominium property that the Respondent has placed a lien on in the instant case." Petitioner stated he had not yet

filed signed Federal income tax returns for the 1992 through 1994 tax years, but he was working with respondent's revenue officer to submit information to complete those returns.  The Court denied petitioner's request for another extension of time to file his brief and notified petitioner that the Court would decide the case on the record and arguments previously submitted.

Factual Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioner testified that "for purposes of the trial" and when he filed the petition in this case, he resided at One Strawberry Hill Court, Unit 11-C, Stamford, Connecticut (the Strawberry Hill address).  Petitioner testified he is a resident of Nevada for State income tax purposes.

Petitioner testified he is a self-employed engineer who travels up to 3 months at a time more than once a year.  In Form 433-A, Collection Information Statement for Individuals, filed with the Internal Revenue Service (IRS) on November 11, 1998, petitioner said he was a "volunteer" and "not employed."

Petitioner does not receive wages or salary from which tax is withheld.  During the tax years at issue, petitioner paid estimated taxes, and petitioner held accounts with financial

institutions that withheld taxes from his interest and dividend income.

As of July 26, 2001, petitioner had failed to file Federal income tax returns for his tax years 1988 through 2000.[4]  There is no record information or other evidence that petitioner has filed returns for his 1992 through 1994 tax years.

Petitioner "[dropped] everything" in 1988 when both his elderly parents were ill with cancer.  Petitioner's parents died in 1990.  Since 1988, petitioner has had a "combination of health problems (including * * * surgery)".

Petitioner could not locate his 1987 return among his papers and other personal possessions that were packed in boxes as a result of residential moves.  Petitioner eventually found a copy of his 1987 return before trial but made no effort to have it admitted into evidence.  Petitioner asserted his 1987 return shows a capital loss carryover of $187,000 and an overpayment of tax exceeding $12,000, and he had unspecified losses in subsequent years, including 1988 through 1993.

During 1996, petitioner used his address at 25 West Elm Street, Greenwich, Connecticut (the Elm Street address), to receive Forms 1099-B, Proceeds From Broker and Barter Exchange

---

[4]As of Jan. 6, 2003, petitioner had filed returns for his 1995 and 1996 tax years.

Transactions, and Forms 1099-Div, Dividends and Distributions, from financial institutions that paid investment income to him.

On December 12, 1996, after having prepared SFRs for petitioner's tax years at issue, respondent mailed three notices of deficiency to petitioner determining income tax deficiencies of $15,812, $10,210, and $153,787 for petitioner's 1992, 1993, and 1994 tax years, respectively, failure to file additions to tax under section 6651(a)(1) of $211 for 1992 and $24,758 for 1994, and additions to tax under section 6654 of $689 for 1992 and $7,352 for 1994 for failure to pay estimated tax.[5] Respondent sent the notices of deficiency by certified mail to the Elm Street address.

On January 8, 1997, the U.S. Postal Service returned to respondent the notices of deficiency and the covering envelopes stamped "unclaimed". The envelopes displayed no indication that petitioner was no longer using the Elm Street address or that this address was invalid.

Petitioner did not file petitions with the Court disputing the determinations set forth in the statutory notices.

On May 5, 1997, respondent assessed income tax liabilities against petitioner for the tax years at issue on the basis of the

---

[5]Respondent did not determine penalties for petitioner's 1993 tax year.

SFRs and petitioner's failure to petition the Court to dispute the deficiencies determined in the statutory notices.

On or about December 28, 1997, respondent's revenue officer Ronald Mele (Revenue Officer Mele) confirmed with postal employees that petitioner's previous mailing address was the Elm Street address. On January 28, 1998, Revenue Officer Mele confirmed with postal employees that petitioner was using his Strawberry Hill address as his mailing address and updated respondent's computer records accordingly.

During a telephone conversation sometime in 1998, petitioner instructed Revenue Officer Mele to use the post office box address as his mailing address rather than the Strawberry Hill address.

### Respondent's Proposed Levy

On March 8, 1999, respondent sent petitioner by certified mail addressed to petitioner at his post office box address a final notice of intent to levy and notice of right to a hearing. On May 14, 1999, respondent received petitioner's untimely Form 12153, Request for a Collection Due Process Hearing. On June 7, 1999, respondent granted petitioner a so-called equivalent hearing under section 301.6330-1T(i), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 3413 (Jan. 22, 1999), because petitioner's request was untimely. On September 13, 1999, respondent's

Appeals Office issued petitioner a decision letter upholding the proposed levy.

In a letter dated October 22, 1999, Revenue Officer Mele informed petitioner that respondent would begin levying on his income sources and assets on November 5, 1999.

On or about November 8, 1999, petitioner submitted a Form 9423, Collection Appeal Request, in which he attributed the delays in filing his returns to respondent's failure to follow through on petitioner's request for capital loss carryover information from 1987 that he needed to file his returns for the tax years at issue. Petitioner's Form 9423 states that Revenue Officer Mele was unable to obtain petitioner's 1987 return.

On or about December 7, 1999, petitioner submitted to Revenue Officer Mele a request to enter into an installment agreement to pay his tax liabilities for 1992 through 1994. On January 11, 2000, Revenue Officer Mele sent a letter to petitioner's post office box address denying petitioner's request for an installment agreement because petitioner had not filed income tax returns for 1992 through 1999. The January 11, 2000, letter specifically instructed petitioner to send an appeal request to Revenue Officer Mele at his office address on or before February 11, 2000, if petitioner wished to appeal the denial of his installment agreement request. Petitioner did not appeal the denial of his installment agreement request.

Lien Proceeding

On January 31, 2000, Revenue Officer Donald Angotta (Revenue Officer Angotta) replaced Revenue Officer Mele for purposes of collecting petitioner's 1992 through 1994 tax liabilities.

On February 23, 2000, respondent filed an NFTL with respect to petitioner's 1992 through 1994 tax liabilities against petitioner's real property at the land record office in Stamford, Connecticut. The lien attached to the condominium unit petitioner owned at the Strawberry Hill address.

On February 23, 2000, respondent's lien unit office mailed petitioner Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320, to the Strawberry Hill address, with a copy of the NFTL and a Form 12153.

On March 15, 2000, respondent received from petitioner a Form 12153 with an attached letter to Revenue Officer Angotta and an attached memorandum (the attached memorandum). On the Form 12153, petitioner listed his telephone number and instructed the IRS to write to petitioner's post office box address, which he said he checked twice a month, if the IRS was unable to reach him by telephone. Petitioner placed the words "See Attachment", apparently referring to the attached memorandum, under both notations on the Form 12153 that allowed him to appeal either a "Filed Notice of Federal Tax Lien" or a "Notice of Levy".

In the attached memorandum, petitioner asserted he would complete his delinquent returns within 60-90 days to prove that he did not owe the tax liabilities determined by respondent.

In the attached memorandum, petitioner also stated he was appealing Revenue Officer Angotta's "levy warning letter" dated February 14, 2000, which, according to petitioner, stated: "Enforced collection may include placing a levy on your bank accounts, wages, receivables, commissions, etc."[6]  In the attached memorandum, petitioner asserted:  "Mr Angotta informed me over the telephone that I have until March 15, 2000 to appeal this action."

In the attached memorandum, petitioner also said Revenue Officer Angotta failed to respond to petitioner's messages left on Revenue Officer Angotta's answering machine before February 11, 2000, in which petitioner stated that he was ready to personally meet with Revenue Officer Angotta to hand in his appeal.

In a letter dated June 22, 2000, Appeals Officer William A. Hirsch (Appeals Officer Hirsch) informed petitioner that respondent's NFTL had been assigned to him for consideration. After repeated failed attempts by Appeals Officer Hirsch and petitioner to get in touch with each other, Appeals Officer Hirsch, in a letter dated July 26, 2000, informed petitioner that

---

[6]The Feb. 14, 2000, letter was not part of the record.

he needed to file his delinquent returns by August 31, 2000, as a condition to discussing collection alternatives such as an installment agreement or an offer in compromise.

On October 3, 2000, Appeals Officer Hirsch telephoned petitioner and attempted to conduct a section 6320 hearing, at which time petitioner requested an extension of time to review his notes. During this conversation, Appeals Officer Hirsch granted petitioner's request for an extension to file his delinquent returns until November 30, 2000. Petitioner agreed to conduct the hearing by telephone rather than in person within 1 week of submitting his delinquent returns.

On October 4, 2000, Appeals Officer Hirsch sent petitioner a letter scheduling a telephone hearing for December 8, 2000.

On December 8, 2000, Appeals Officer Hirsch telephoned petitioner and conducted petitioner's section 6320 hearing, even though petitioner had not yet filed his delinquent returns. There is no evidence in the record that petitioner at any time either requested that the hearing be held in person or objected to the holding of a hearing by telephone.

On July 26, 2001, respondent's Appeals Office issued a notice of determination concerning collection actions informing petitioner of the determination not to withdraw the NFTL. As of that date, petitioner had not appealed the rejection of his installment agreement request.

On August 27, 2001, petitioner timely mailed his petition with the Court in response to the July 26, 2001, notice of determination; the Court received and filed the petition on September 4, 2001.[7]

Discussion

As a preliminary matter, we note that petitioner's mail and living arrangements, which have created and continue to create difficulties in contacting him, and his repeated failures to comply with deadlines, have impeded and delayed respondent's collection efforts and the efforts of the Court to resolve these matters.

We note that petitioner has uttered contradictory testimony and arguments and has failed to provide respondent and the Court with reliable information and documents to resolve this matter. Petitioner bears the risk of loss and the responsibility arising from failure to prepare and file returns and to preserve and locate his cost records and copies of prior returns for use in substantiating items required to be reported on his returns for the years in issue.

---

[7]Petitioner's mailing of the petition was a timely filing on the last day of the 30-day period specified by secs. 6320(c) and 6330(d), as extended by Rule 25. Aug. 25 and 26, 2001, were a Saturday and Sunday, respectively, and petitioner mailed the petition on Monday, Aug. 27, 2001. See Guerrier v. Commissioner, T.C. Memo. 2002-3.

Petitioner's place of residence and employment status are uncertain insofar as the record in this case is concerned because he has given confusing, contradictory, and untrustworthy testimony on these issues. Petitioner testified that he is a resident of Nevada for State income tax purposes, although Nevada has no income tax. See Nev. Rev. Stat. Ann. secs. 360-377A (Michie 1999 & Supp. 2001). Perhaps he means he is a Nevada resident for the purpose of avoiding State income taxes.

Petitioner's testimony that he is a self-employed engineer who travels away from home for up to 3 months at a time more than once a year contradicts his claim that when he uses or has used the post office box address as his mailing address, he checks his mail twice a month. In Form 433-A, filed on November 11, 1998, petitioner said he was a "volunteer" and "not employed."

Petitioner has used the illness of his parents from cancer in 1988 and thereafter as a continued excuse for failing to file returns right up to the present, even though he also testified in another connection that his parents died in 1990.

On more than one occasion, petitioner defined what respondent had to do before petitioner would take action. Petitioner then did nothing because respondent's officials did not exactly follow petitioner's requirements as he defined and sought to impose them. Petitioner has failed to file returns with respect to more than 10 tax years, failed to timely appeal

the denial of his installment agreement request, failed, after repeated extensions, to file his brief, and failed to file certain motions that he claimed he was filing before submitting his brief.

Petitioner repeatedly made legal arguments orally during the trial, even though we instructed petitioner to present his legal arguments in his brief.  Although we could reject petitioner's contentions and declare him in default, and dismiss his case for failure to file his brief, see Rules 123, 151; Stringer v. Commissioner, 84 T.C. 693 (1985), affd. without published opinion 789 F.2d 917 (4th Cir. 1986); Horn v. Commissioner, T.C. Memo. 2002-207, we choose instead to address the merits of respondent's determination to file a lien on petitioner's property, see Horn v. Commissioner, supra; Comey v. Commissioner, T.C. Memo. 2001-275.

Petitioner contests the filing of the NFTL.  Petitioner failed to file a timely request for hearing with respect to respondent's proposed levy.  We therefore have no jurisdiction to consider the levy.  See Moorhous v. Commissioner, 116 T.C. 263, 269 (2001); Kennedy v. Commissioner, 116 T.C. 255, 261-262 (2001).[8]

---

[8]Petitioner referred to respondent's alleged levies that occurred in January 1998 that were not part of the record.  To the extent that petitioner refers to respondent's collection activities before July 22, 1998, we have no jurisdiction to
(continued...)

We have jurisdiction to review respondent's determination of the validity of the Federal tax lien on petitioner's property under section 6320.  See secs. 6211(a), 6213(a), 6214(a); Parker v. Commissioner, 117 T.C. 63, 65 (2001); Van Es v. Commissioner, 115 T.C. 324, 327 (2000).

Where the validity of the underlying tax liability is properly at issue, the Court will review the matter de novo. Where the validity of the underlying tax liability is not properly at issue, the Court will review the Commissioner's administrative determination for abuse of discretion.  Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  A taxpayer's underlying tax liability may be at issue if he did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability. See secs. 6320(c), 6330(c)(2)(B).

Petitioner claims he did not file petitions with this Court contesting the determinations in the three notices of deficiency because he did not receive the notices of deficiency.

The notices of deficiency were properly mailed on December 12, 1996, to petitioner's last known address, which, at the time,

---

[8](...continued)
review them.  See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3401, 112 Stat. 746 (which created new sec. 6330 and provided for an effective date of 180 days after July 22, 1998); see also Van Es v. Commissioner, 115 T.C. 324, 327-328 (2000).

was the Elm Street address.  There is no record evidence petitioner notified respondent before December 12, 1996, that the Elm Street address was no longer his mailing address. Respondent performed a thorough investigation to determine petitioner's address by contacting the U.S. Postal Service and using the numerous Forms 1099 petitioner received in 1996.

On January 8, 1997, the U.S. Postal Service returned to respondent the notices of deficiency and the covering envelopes stamped "unclaimed".  The envelopes displayed no indication that petitioner was no longer using the Elm Street address or that this address was invalid.  In the absence of clear evidence to the contrary, the presumptions of official regularity and delivery justify the conclusion that respondent sent the statutory notices, and the U.S. Postal Service properly attempted to deliver the notices.  See United States v. Zolla, 724 F.2d 808 (9th Cir. 1984); United States v. Ahrens, 530 F.2d 781 (8th Cir. 1976); Sego v. Commissioner, 114 T.C. 604, 611 (2000).  The facts and circumstances of this case, including petitioner's failure to claim mail sent by the Court and the difficulties in contacting him, lead us to conclude that petitioner's conduct constituted deliberate refusal of delivery of the statutory notices.  He thereby forfeited his opportunity to contest the underlying deficiencies in a proceeding in this Court under section 6330(d).

See Goza v. Commissioner, supra at 183; Sego v. Commissioner, supra; Carey v. Commissioner, T.C. Memo. 2002-209.

Because the underlying tax liabilities are not properly at issue, we review respondent's determination for abuse of discretion. See Goza v. Commissioner, supra; Sego v. Commissioner, supra at 610; Hodgson v. Commissioner, T.C. Memo. 1998-70, affd. 18 Fed. Appx. 571 (9th Cir. 2001). We must decide whether respondent exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law. See Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Fargo v. Commissioner, T.C. Memo. 2004-13.

Petitioner argues he is not liable for the deficiencies assessed by respondent. Petitioner also argues respondent's Appeals Office abused its discretion in sustaining the filing of the lien because: (1) Respondent did not comply with the notice requirements of section 6320(a); (2) respondent failed to comply with petitioner's request to conduct the section 6320 hearing in person rather than by telephone; and (3) respondent is precluded from filing the NFTL before petitioner appeals the rejection of his installment agreement request.

As explained below, we hold petitioner is liable for the deficiencies. We hold respondent's Appeals Office did not abuse its discretion by upholding respondent's filing of the lien.

Issue 1.  Petitioner's Liability for the Assessed
              Deficiencies

Petitioner has stated that he wishes to contest the underlying liabilities for his tax years at issue.  Petitioner argues that respondent's determination of the amounts of the assessed income tax liabilities is incorrect because petitioner would have little or no capital gains tax liability if respondent's SFRs had used the actual cost bases, instead of zero-cost bases, to determine his income from the sale of securities, and if the SFRs had accounted for a capital loss carryover from 1987.

Petitioner is liable for the assessed deficiencies because the conditions have not been satisfied that would entitle him to contest the deficiencies in this proceeding.

Petitioner was entitled at the hearing with the Appeals officer to challenge the existence or amount of the underlying tax liabilities for the periods in issue only if he did not receive a statutory notice of deficiency or did not otherwise have an opportunity to dispute the liabilities.  See sec. 6330(c)(2)(B).

Petitioner forfeited his opportunity to contest the underlying deficiencies in a proceeding in this Court under section 6330(d) because of his deliberate refusal of delivery of the statutory notices.  See supra pp. 18-19.

In any event, petitioner was not ready at trial to prove that the assessments overstated his tax liabilities. Taxpayers bear the burden of proving their entitlement to deductions. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). The Commissioner is required only to prepare the substitute for return "from his own knowledge and from such information as he can obtain through testimony or otherwise." Sec. 6020(b); see Andary-Stern v. Commissioner, T.C. Memo. 2002-212. Petitioner did not offer into evidence any records, not even the 1987 return, that would tend to prove his contentions that he had cost bases greater than zero for purposes of determining gains and losses on the sale of his securities, or that he had a capital loss carryover from 1987. See Poindexter v. Commissioner, 122 T.C. 280 (2004); Horn v. Commissioner, T.C. Memo. 2002-207; Smith v. Commissioner, T.C. Memo. 2002-59. Respondent is not obligated to accept any late-filed returns unless petitioner can substantiate his claimed capital loss carryover or any other losses. See sec. 6001; Rules 142(a), 149(b); Horn v. Commissioner, supra; Smith v. Commissioner, supra; sec. 1.6001-1(a), (e), Income Tax Regs.

We do not accept petitioner's excuse that he intends to file returns for 1992 through 1994. Petitioner has procrastinated and has failed to file the returns more than 1 year after finding his 1987 return in 2002. See, e.g., Montgomery v. Commissioner, 122

T.C. 1, 19 (2004) (Marvel, J., concurring) ("A taxpayer who procrastinates and seeks to rely solely on his announced intention to file an amended return as a defense to a proposed levy or lien * * * proceeds at his peril as his undocumented intention is not likely to be viewed as a credible challenge to the underlying tax liability.").  So much more so with respect to petitioner, who has never even filed original returns for the years in issue.

Issue 2.  Respondent's Exercise of Discretion in Sustaining the Lien

a.  Overview of Lien Proceedings

The Federal Government obtains a lien against "all property and rights to property, whether real or personal" of any person liable for Federal taxes upon demand for payment and failure to pay.  See sec. 6321; Iannone v. Commissioner, 122 T.C. 287, 293 (2004).  The lien arises automatically on the date of the assessment and continues until the tax liability is satisfied or the statute of limitations bars enforcement of the lien.  Sec. 6322; Iannone v. Commissioner, supra.  If the taxpayer fails to pay, the IRS usually files an NFTL with the appropriate State office in order to validate the lien against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor.  See sec. 6323(a); Lindsay v. Commissioner, T.C. Memo. 2001-285.

The Commissioner must provide the taxpayer with written notice of the filing of an NFTL not more than 5 business days after filing and must advise the taxpayer of the right to a hearing before the IRS Appeals Office.  Sec. 6320(a)(1), (2) and (3).

If the taxpayer requests a hearing, the IRS Appeals officer conducting the hearing must verify that the requirements of any applicable law or administrative procedure have been met.  Secs. 6320(c), 6330(c)(1).  The Appeals officer must also determine whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary.  Secs. 6320(c), 6330(c)(3).

The IRS may withdraw an NFTL if the taxpayer has entered into an installment agreement to satisfy the liability for which the lien was imposed (and the installment agreement does not specify that the lien will not be withdrawn).  Sec. 6323(j)(1).

b.  <u>Abuse of Discretion</u>

(i)  <u>Section 6320(a) Notice Requirements</u>

We reject petitioner's argument that respondent should not have sustained the filing of the Federal tax lien because respondent failed to mail Letter 3172 and the accompanying NFTL to petitioner's last known address.

Notice of the lien filing may be given to the taxpayer in person, left at the taxpayer's dwelling, or sent by certified or registered mail to the taxpayer's last known address. Sec. 6320(a)(2).

On February 23, 2000, respondent timely mailed to petitioner's Strawberry Hill address, Letter 3172, with a copy of the NFTL.

Petitioner sent a Form 12153 that was received by respondent on March 15, 2000, within 30 days of respondent's filing of the NFTL and the mailing of the Letter 3172. Petitioner sent the Form 12153 to appeal the February 14, 2000, "levy warning letter" he claims was issued by Revenue Officer Angotta.

On December 8, 2000, respondent provided petitioner with a section 6320 hearing to contest the filing of the NFTL. Because the hearing had been timely requested within the prescribed 30-day period, petitioner's claims that respondent did not send Letter 3172 to petitioner's last known address and that petitioner never received it are beside the point. Even though, in the Form 12153, petitioner appealed an alleged "levy warning letter", Appeals Officer Hirsch's letters sent to petitioner before the section 6320 hearing clearly indicated that the section 6320 hearing would deal with the NFTL.

(ii) Section 6320 Hearing in Person

Petitioner argued Appeals Officer Hirsch did not properly conduct the section 6320 hearing in person.

Section 6320(c) requires that the section 6320 hearing be conducted under the provisions of section 6330(c), (d), and (e). The hearing under section 6330 need not be conducted face to face. See sec. 301.6320-1(d)(2), Q&A-D6 and D7, Proced. & Admin. Regs; see also Lunsford v. Commissioner, 117 T.C. 183 (2001); Day v. Commissioner, T.C. Memo. 2004-30; Armstrong v. Commissioner, T.C. Memo. 2002-224.

Respondent was not required to provide petitioner with a face-to-face section 6320 hearing. There is no evidence in the record petitioner requested such a hearing. Petitioner agreed the telephone hearing constituted his section 6320 hearing and did not object to the holding of the hearing by telephone.

On the basis of the entire record and applicable law, we conclude that the Appeals officer properly conducted petitioner's section 6320 hearing under section 6320(c).

(iii) Appeal of Rejection of Installment Agreement

Petitioner argues that Revenue Officer Angotta prevented him from filing an administrative appeal of the denial of his installment agreement request, and that respondent's consideration of the appeal would have precluded respondent from filing the NFTL or levying against his property.

Respondent would not have been required to withdraw the NFTL even if petitioner had entered into an installment agreement to satisfy the liability for which the lien was imposed. See sec. 6323(j)(1); sec. 301.6323(j)-1(c), Proced. & Admin. Regs. IRS Publication 594, What You Should Know About the IRS Collection Process, cited by petitioner, specifically states that the Commissioner may file a tax lien even if an installment agreement is in effect. IRS Publication 594 at 6; see, e.g., Beery v. Commissioner, 122 T.C. 184, 189-190 (2004) (section 6015(e)(1)(B) does not preclude the Commissioner from filing a Federal tax lien against an individual making an election under section 6015).[9] We hold respondent was not precluded from filing the NFTL against petitioner's property.

Conclusion

Respondent's Appeals Office did not abuse its discretion in upholding respondent's filing of a Federal tax lien against petitioner's property to collect outstanding income tax liabilities for petitioner's 1992 through 1994 tax years. As required by section 6330(c)(1), the Appeals officer verified that the requirements of applicable laws and administrative procedures

---

[9]In his petition and during trial, petitioner conflated the lien and levy issues. We do not have jurisdiction to consider any of petitioner's arguments with respect to respondent's proposed levy including petitioner's argument that his appeal of the rejection of his installment agreement request would preclude respondent's proposed levy. See supra p. 16.

had been met.  The Appeals officer also determined that the filing of the tax lien balanced the need for efficient collection of taxes with petitioner's legitimate concerns that any collection action be no more intrusive than necessary.  Although this case does not involve a jeopardy assessment under section 6861, respondent's security interest in petitioner's property will be jeopardized if respondent's security interest is subordinated to those of other creditors, such as the party or parties involved in the foreclosure litigation with respect to petitioner's condominium against which respondent filed the NFTL. See sec. 6323(a); Lindsay v. Commissioner, T.C. Memo. 2001-285; see also Iannone v. Commissioner, 122 T.C. at 293 (Federal tax liens are not extinguished by personal discharge in bankruptcy).

Petitioner's latest status report indicates petitioner is working with a revenue officer to attempt to reach agreement with respondent on his outstanding tax liabilities.  If that is so, we commend respondent for displaying extraordinary patience and forbearance in attempting to continue to work with petitioner. See, e.g., Montgomery v. Commissioner, 122 T.C. at 10 (the substantive and procedural protections contained in sections 6320 and 6330 reflect congressional intent that the Commissioner collect the correct amount of tax, and do so by observing all applicable laws and administrative procedures).

In the meantime, we have sustained respondent's lien;

respondent has complied with all requirements for its validity. In any event, we do not intend to subject respondent's ability to collect petitioner's tax liabilities to further jeopardy.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.