T.C. Summary Opinion 2010-148


UNITED STATES TAX COURT


CARLOS J. MARTINEZ, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11505-08S.               Filed October 5, 2010.


Carlos J. Martinez, pro se.

<u>A. Gary Begun</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code.

The petition in this case arises from the issuance of a notice of determination by the Los Angeles Appeals Office allowing the Internal Revenue Service (IRS) to proceed with collection by levy of petitioner's unpaid assessed 2002 Federal income tax liability.

The threshold issue for decision is whether petitioner was entitled to contest his underlying liability for 2002 at the collection hearing. If so, then the Court must decide the correctness of adjustments set forth below that respondent had previously determined in a notice of deficiency and assessed with respect to petitioner's 2002 Federal income tax return: (1) Disallowance of dependency exemption deductions that petitioner claimed for his two children; (2) disallowance of all of the expenses that petitioner claimed on his Schedule C, Profit or Loss From Business; (3) disallowance of the earned income tax credit that petitioner claimed, which he computed using his two children as qualifying dependents; and (4) an addition to tax under section 6651(a)(1) for late filing. If petitioner was not entitled to contest his underlying liability at the collection hearing, then the Court must decide whether respondent abused his discretion by sustaining the proposed levy collection action for petitioner's unpaid Federal income tax liability for 2002.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.[1]  When the petition was filed, petitioner resided in California.

Petitioner married Cristofora M. Martinez in 1993.  They had two children born during their marriage:  One born in 1994 and the other in 1998.

Since at least 1995 and continuing through the date of trial, including the year at issue, 2002, petitioner has maintained a license as a registered process server.  In 2002 petitioner was also attending Cal State part time at night studying toward a master's degree.  Ms. Martinez started working in 2002 at a hospital during the overnight shift as a certified nurse assistant.  Throughout the year petitioner lived with Ms. Martinez and their two children in a two-bedroom apartment.  The children attended school during the day.

In March 2003 Ms. Martinez had the police remove petitioner from their family apartment because of domestic violence.  The police detained petitioner but did not arrest or charge him.

---

[1]Petitioner initially objected in writing and at trial to several documents respondent proffered, stating that he had not previously received copies of the documents.  Petitioner, however, after reviewing copies of the documents at trial, withdrew his objections, and the Court received them into evidence.

Afterwards, petitioner never returned. He lived in his automobile for a while, then began staying with a cousin. As of the date of trial, petitioner still considered himself "legally * * * homeless". In May 2005 petitioner and Ms. Martinez divorced.

From no later than early 2003 and possibly years earlier, petitioner rented a U.S. Postal Service (Postal Service or PS) post office box (P.O. box) that he used as his official mailing address. Petitioner continued to use and listed on the petition that he filed with this Court in May 2008 the same P.O. box as his address.

Petitioner had an accountant prepare his 2002 Federal income tax return. Petitioner listed the aforementioned P.O. box as his filing address on the return. The accountant and petitioner dated their signatures August 9, 2003, and petitioner mailed the return on August 13, 2003, to the IRS. Petitioner did not request or receive an extension of time to file the return.

Petitioner filed his 2002 return as single. He claimed a dependency exemption deduction for each of his two children. He reported that the process server activity was his sole source of income. Petitioner attached a Schedule C to the return on which he listed the same P.O. box as the address for his process server activity. On the Schedule C, petitioner reported a net profit of $5,553, which consisted of $29,682 in gross receipts and $24,129

in business expense deductions. Petitioner also claimed an earned income credit (EIC) of $2,070 for 2002. He attached to his return a Schedule EIC, Earned Income Credit, on which he claimed his two children as qualifying dependents for purposes of calculating the EIC. Petitioner's return resulted in a $1,285 overpayment, for which petitioner requested a full refund.

The IRS froze the refund. In April 2004 the IRS mailed to petitioner at his P.O. box address a letter requesting documentation to support his dependency exemption deductions, Schedule C expenses, and EIC for 2002. Petitioner did not respond.

Respondent issued a notice of deficiency dated June 17, 2004, to petitioner determining a deficiency in petitioner's 2002 Federal income tax of $8,160 and an addition to tax of $1,375 for late filing under section 6651(a)(1). The deficiency arose from respondent's disallowance of the two claimed dependency exemptions deductions, all of the claimed Schedule C business expense deductions, and the entire earned income tax credit and determination of a computational increase in petitioner's self-employment tax.

Respondent sent the notice of deficiency by certified mail to petitioner's last known address, his P.O. box. The Postal Service left a notice in petitioner's P.O. box informing him that he had received certified mail. Petitioner did not claim the

notice of deficiency, and the Postal Service returned the notice of deficiency to respondent with a stamp on the envelope marking it as "unclaimed".

Because petitioner did not file a petition with the Court in response to the notice of deficiency, the IRS on November 22, 2004, assessed the deficiency, addition to tax, and interest for 2002. On February 9, 2005, the IRS filed a Federal tax lien for unpaid income taxes for 2001-2003 in the county where petitioner resided. In a further attempt to collect petitioner's unpaid 2002 and 2003 Federal income tax liabilities, respondent sent a Final Notice of Intent to Levy and Notice of Your Right to a Hearing (final notice) dated December 22, 2006, to petitioner at his P.O. box. Petitioner's total unpaid liabilities at this time were $11,969.29 and $520.02 for 2002 and 2003, respectively.[2]

Petitioner responded to this final notice by filing a Form 12153, Request for a Collection Due Process or Equivalent Hearing, dating his request as January 9, 2007. Petitioner's envelope listed his P.O. box as his return address.

In response to the Form 12153, a settlement officer reviewed the IRS' files, confirmed that the IRS had followed the proper administrative procedures before issuing the final levy notice,

_____

[2]After filing this petition, petitioner paid his 2003 Federal income tax liability in full. Respondent moved to dismiss the case with regard to tax year 2003 on the ground of mootness, which the Court granted. Therefore, 2002 is the only year remaining at issue.

and sent a letter to petitioner at his P.O. box scheduling a telephone collection hearing for July 19, 2007. The letter also informed petitioner that a discussion of collection alternatives was not possible unless petitioner completed the enclosed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals. The settlement officer made the conference call at the appointed time, but the telephone number that petitioner had provided on the Form 12153 had been disconnected.

Four days later, petitioner called the settlement officer. He stated that he had exhausted his ability to pay, questioned how he could have a liability for 2002 in excess of $12,000 when his gross income for the year was only $5,553, and requested a face-to-face hearing. The settlement officer transferred the case to another settlement officer who was in a location convenient to petitioner. The new settlement officer reviewed petitioner's file, determined again that the IRS had followed the proper administrative procedures, noted that petitioner had previously filed an offer-in-compromise for 2002, and scheduled an in-person hearing for October 2, 2007. Petitioner appeared at the appointed time.

At the hearing petitioner attempted to contest his unpaid underlying income tax liability for 2002 by contending that he was entitled to: (1) The two disallowed dependency exemption

deductions; (2) the disallowed Schedule C business expense deductions; and (3) the disallowed earned income tax credit. Petitioner did not provide documentation to support his entitlement to the disallowed deductions or the disallowed EIC. Petitioner did not bring a completed Form 433-A and stated that he did not have a bank account, he was living with his cousin, and instead of maintaining his process server activity he now helped people fill out documents for courts. The settlement officer suggested another offer-in-compromise as a collection alternative. Petitioner was receptive, and the settlement officer gave petitioner until the end of the month to complete Form 433-A and Form 656, Offer in Compromise.

On October 17, 2007, the settlement officer received from petitioner the two requested forms, which were incomplete. The settlement officer forwarded the forms to the IRS centralized processing unit for offers-in-compromise. Under doubt as to collectibility, petitioner offered $500 to settle in full his unpaid liabilities for 1999 through 2002. Petitioner indicated that he was living with a relative, that he had monthly income and expenses of $1,000 and $1,310, respectively, and that his only assets were $48 in cash on hand and a 2003 car with a fair market value of $1,500 and a current loan balance of $4,324.13.

On February 15, 2008, petitioner orally withdrew his offer-in-compromise because he was unable or unwilling to provide

certain supporting documentation that the IRS had requested. The settlement officer wrote to petitioner requesting that he propose another collection alternative within the next 3 weeks. Petitioner did not respond with any other collection alternative. Consequently, in a notice of determination dated April 16, 2008, the Appeals team manager sustained the proposed levy collection action.

Discussion

## I. Standard of Review

If a taxpayer neglects or refuses to pay a Federal income tax liability within 10 days after notice and demand for payment, the Commissioner may collect the tax by levy upon the person's property. Sec. 6331(a). The Commissioner generally must provide the taxpayer written notice of the right to a hearing before the levy is made. Sec. 6330(a). Upon a timely request, the taxpayer is entitled to an administrative hearing before an impartial officer or employee of the Appeals Office. Sec. 6330(b). Following the hearing, the Appeals officer must determine whether the collection action is to proceed, taking into account the verification the Appeals officer has made, the issues raised by the taxpayer at the hearing, and whether the collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary. Sec. 6330(c)(3).

At the hearing a taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and possible collection alternatives. Sec. 6330(c)(2)(A). A taxpayer may contest the validity of the underlying income tax liability, but only if the taxpayer did not receive a notice of deficiency or otherwise have an opportunity to dispute the underlying income tax liability. See sec. 6330(c)(2)(B); Sego v. Commissioner, 114 T.C. 604, 609 (2000). The phrase "underlying tax liability" includes the deficiency, additions to tax, and statutory interest. Katz v. Commissioner, 115 T.C. 329, 339 (2000). We will now apply the law to the facts and circumstances of this case.

II. Whether Petitioner May Challenge the Underlying Liability

Section 6212(a) and (b)(1) provides that a valid notice of deficiency has been issued if it is mailed to the taxpayer's last known address. Where the Commissioner produces a properly executed Postal Service Form 3877 showing that the IRS sent a notice of deficiency by certified mail to the taxpayer at the individual's last known address, the presumption of official regularity arises. The presumption creates a strong indication that the IRS mailed the notice and that the Postal Service delivered or offered the notice for delivery at the address to which it was sent. In the absence of clear evidence to the

contrary, receipt of the notice will be presumed.  See <u>Sego v. Commissioner</u>, <u>supra</u> at 611.

Where the taxpayer does not dispute the existence of the notice of deficiency, the Commissioner's production of a properly completed PS Form 3877 is sufficient evidence by itself, absent evidence to the contrary, that the Commissioner properly mailed the notice of deficiency to the taxpayer.  <u>United States v. Zolla</u>, 724 F.2d 808, 810 (9th Cir. 1984);[3] <u>Coleman v. Commissioner</u>, 94 T.C. 82, 91 (1990).  Thus, the Commissioner's strict compliance with PS Form 3877 mailing procedures raises a presumption of official regularity in favor of the Commissioner. <u>United States v. Zolla</u>, <u>supra</u>; <u>Coleman v. Commissioner</u>, <u>supra</u>.

A taxpayer's self-serving claim that he did not receive a notice of deficiency standing alone is generally insufficient to rebut the presumption of official regularity.  See <u>Sego v. Commissioner</u>, <u>supra</u> at 611.  In addition, a taxpayer cannot defeat actual receipt by deliberately refusing delivery.  <u>Sego v. Commissioner</u>, <u>supra</u> at 610-611; <u>Stein v. Commissioner</u>, T.C. Memo. 2004-124; <u>Carey v. Commissioner</u>, T.C. Memo. 2002-209.

Petitioner does not dispute the existence of the notice of deficiency, and he admits the IRS addressed the notice to his last known address.  He asserts, however, that he did not

---

[3]If this case were appealable, which it is not because petitioner elected sec. 7463 small tax case procedures, the appeal would lie in the Court of Appeals for the Ninth Circuit.

deliberately refuse to accept delivery of the notice of deficiency. Instead, petitioner contends that the Postal Service returned the notice of deficiency to the IRS before he had time to claim the delivery because during this period, he checked his P.O. box no more often than once a week, and at times 2 or 3 weeks would pass before he returned to check the P.O. box.

At trial the Court received into evidence a copy of the notice of deficiency that respondent sent by certified mail on June 17, 2004, to petitioner at his last known address, the P.O. box he had listed on his 2002 Federal income tax return that he had filed in August 2003. The Court also received into evidence a properly executed PS Form 3877, dated June 17, 2004, which recorded that a notice of deficiency was sent by certified mail to petitioner at his last known address.

Petitioner's claim that he did not receive the notice of deficiency because he infrequently checked his mailbox is insufficient to rebut the presumption of official regularity that the notice of deficiency was delivered to or offered for delivery at his last known address consistent with the PS Form 3877 certified mail list dated June 17, 2004.

Respondent followed official procedure by providing the June 17, 2004, certified mail list, demonstrating that the notice of deficiency was sent, by certified mail, to petitioner's last known address. The Postal Service left notice for petitioner,

but the notice of deficiency remained unclaimed. The Postal Service returned the notice to respondent marked "unclaimed".

Petitioner is therefore deemed to have been in receipt of the notice of deficiency. Accordingly, he is not entitled to challenge his underlying income tax liability. See Sego v. Commissioner, 114 T.C. at 611; Goza v. Commissioner, 114 T.C. 176, 182 (2000).

III. Review of the Notice of Determination for Abuse of Discretion

When the validity of the underlying tax liability is not properly at issue, as is the case here, the Court reviews the notice of determination for abuse of discretion. Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 182.

We have jurisdiction to review Appeals Office determinations upholding levy actions. Sec. 6330(d)(1). Generally, the Court will consider only arguments, issues, and other matters that were raised at the section 6330 hearing or otherwise brought to the attention of the Appeals Office. Magana v. Commissioner, 118 T.C. 488, 493 (2002). The Appeals Office abuses its discretion if the taxpayer shows that the Appeals Office's actions were arbitrary, capricious, or without sound basis in fact. Mailman v. Commissioner, 91 T.C. 1079, 1084 (1988).

Petitioner initially proposed an offer-in-compromise during his hearing, but he later orally withdrew the offer. The only other argument petitioner advanced was a challenge to his

underlying liability.  He has not presented any other evidence demonstrating that the determination to sustain the levy was arbitrary, capricious, or without foundation in fact, or otherwise an abuse of discretion.

This Court has consistently held that there is no abuse of discretion in sustaining a levy when the taxpayer fails to propose any collection alternatives.  See <u>Kendricks v. Commissioner</u>, 124 T.C. 69, 79 (2005); <u>Cavazos v. Commissioner</u>, T.C. Memo. 2008-257.  Here:  (1) The Appeals Office verified that all requirements of applicable law and administrative procedure were met and that the proposed levy balanced the need for efficient collection of taxes with concerns that the collection be no more intrusive than necessary; and (2) petitioner failed to provide all of the information that the settlement officers requested and did not provide a serious collection alternative.  Accordingly, the Court finds that respondent did not abuse his discretion in sustaining the proposed collection action.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.