# United States Tax Court

T.C. Memo. 2023-28

MEHLEK DAWVEED,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 19385-21L.                           Filed March 6, 2023.

————————

Mehlek Dawveed, pro se.

*Amanda K. Bartmann* and *Stephen C. Welker*, for respondent.


## MEMORANDUM OPINION

LAUBER, *Judge*:  In this collection due process (CDP) case, petitioner seeks review pursuant to sections 6320(c) and 6330(d)(1)[1] of the determination by the Internal Revenue Service (IRS or respondent) to uphold the filing of a notice of Federal tax lien (NFTL) and a notice of intent to levy for 2010.  The IRS took these actions to facilitate collection of restitution it had assessed against petitioner under section 6201(a)(4). That provision authorizes the IRS, following a taxpayer's criminal conviction, to "assess and collect the amount of restitution [ordered by a sentencing court] for failure to pay any tax imposed under this title in the same manner as if such amount were such tax."

The parties have filed Cross-Motions for Summary Judgment under Rule 121.  Finding no disputes of material fact, we conclude that

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*2] petitioner is not entitled to challenge the restitution-based assessment and that the settlement officer (SO) did not abuse her discretion in sustaining the IRS collection actions. We will accordingly deny petitioner's Motion and grant respondent's Cross-Motion.

## *Background*

The following facts are derived from the parties' pleadings and Motion papers, including the attached Declarations and Exhibits. *See* Rule 121(b). Pursuant to Rule 201 of the Federal Rules of Evidence, we take judicial notice of certain filings in petitioner's criminal case. *See United States v. Dawveed*, No. 16-CR-00127-001 (D. Md. filed Mar. 30, 2016). Petitioner resided in Maryland when he timely petitioned this Court.

I.     *Petitioner's Criminal Case*

In 2016 petitioner was indicted by a grand jury on counts of violating 18 U.S.C. §§ 287 (false claims) and 1343 (wire fraud), and section 7212(a) (obstructing administration of the internal revenue laws). The indictment alleged that petitioner had engaged in a fraudulent scheme, by filing false tax returns and otherwise, to obtain a tax refund of $977,558 for 2010. Following issuance of the fraudulently claimed refund, petitioner allegedly sought to impede IRS collection efforts by transferring funds to various business accounts, using those funds to pay off creditors, and writing checks to family members and entities affiliated with them. On February 24, 2012, again in furtherance of his alleged scheme to defraud, petitioner attempted to file a false amended return for 2010 aiming to secure an additional refund.

On June 1, 2018, petitioner pleaded guilty to one count of violating 18 U.S.C. § 1343 (wire fraud). The U.S. District Court for the District of Maryland entered judgment on his plea and sentenced him to 36 months in prison, followed by three years of supervised release. *Dawveed* (order dated June 4, 2018). As a separate component of the sentence, the District Court ordered, pursuant to 18 U.S.C. § 3663(a)(3), that petitioner pay restitution of $788,991 to the IRS for unrecoverable losses resulting from his fraudulent scheme. These losses consisted of $250,000 in unrecoverable money transfers, $130,000 paid to a major creditor, an $88,000 mortgage payment for his personal residence, and $320,991 in other losses. The judgment ordered petitioner to begin making $500 monthly payments to the IRS beginning 60 days after his

[*3] release from prison. *Id*. He was released from prison early, on October 4, 2019.

On June 4, 2018, the District Court entered a consent order of forfeiture, reciting petitioner's agreement to forfeit all property derived from proceeds traceable to his offense, including $788,991 and real property located at 4816 Abbyville Place, Olney, Maryland 20832 (Abbyville address). On August 16, 2018, the special agent assigned to petitioner's case completed Form 14104, Notification of Court Ordered Criminal Restitution Payable to IRS. This form is used to notify IRS civil compliance officers of the final amount of restitution owed.

## II.  *IRS Collection Activity*

Petitioner showed the Abbyville address as his address on his 2010 tax return and used that address for all Federal income tax purposes until December 2020. On December 5, 2020, he changed his address of record to 17703 Coatbridge Place, Olney, Maryland 20832 (Coatbridge address). He appears to have resided intermittently at that address and at the Abbyville address after that date. He represents that his wife, to whom he remains married, also resided at the Abbyville address as of December 2020.

On November 25, 2019, as authorized by section 6201(a)(4), the IRS made a restitution-based assessment (RBA) against petitioner of $788,991, the amount of restitution ordered by the District Court. Respondent subsequently credited petitioner's RBA account with $30,070 recovered through forfeiture, reducing his unpaid balance to $758,921.[2] That same day the IRS mailed to petitioner at his Abbyville address a Notice CP94, Criminal Restitution Final Demand Notice, demanding payment of $758,921. In October 2020, after petitioner failed to make payment, the IRS sent him, again to his Abbyville address, a Notice CP504, Final Balance Due. Petitioner again failed to pay.

On December 15, 2020, in an attempt to collect this unpaid liability, the IRS filed an NFTL and sent petitioner a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing (lien notice). The IRS mailed that notice to petitioner's Abbyville address. On December 29, 2020, after petitioner's account was updated with his new Coatbridge address, the IRS sent to him at that address a Letter 1058, Final

---

[2] On October 10, 2022, the IRS made additional credits to petitioner's RBA account, further reducing his outstanding balance to $738,951.

**[\*4]** Notice of Intent to Levy and Notice of Your Right to a Hearing (levy notice).

III.   *CDP Hearing*

Petitioner timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing, listing the Coatbridge address as his current address. He challenged both collection actions, checking the box "I cannot pay balance." He sought withdrawal of the NFTL and discharge of the tax lien but proposed no other collection alternative. He asserted that he had "no ownership or interest in any real property" and was "unable to pay off the remaining balance."

The case was assigned to an SO from the IRS Independent Office of Appeals. The SO reviewed petitioner's file and verified that all requirements of applicable law and administrative procedure had been satisfied. On April 7, 2021, the SO sent to petitioner at his Coatbridge address a letter scheduling a telephone conference for May 7, 2021. The letter noted that the proposed conference would be petitioner's main opportunity to explain why he disagreed with the collection actions and discuss collection alternatives. The SO explained that she would be unable to consider a collection alternative unless petitioner sent her a completed Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals, with supporting financial information.

The SO verified that the lien and levy notices were sent by certified mail to petitioner's last known address. The lien notice (Letter 3172) was mailed on December 15, 2020, to the Abbyville address. Although petitioner had filed a change-of-address form 10 days earlier, the SO determined that his "address did not update until after the L3172 was requested," so the Abbyville address was "appropriate to use" for that document. The levy notice, issued on December 29, 2020, was properly mailed to petitioner's updated Coatbridge address.

On May 7, 2021, the SO tried to call petitioner but could not reach him. The conference was rescheduled to May 14 and held that day. During the conference petitioner advanced a number of arguments. He first contended that he did not receive either the lien notice or the levy notice, asserting that he was incarcerated and levies and liens were happening while he was away. But he was released from prison in October 2019, more than a year before issuance of the RBA levy and lien notices involved here. The SO confirmed that petitioner had actually received

**[\*5]** both notices: He signed the certified mail receipt for the levy notice and timely filed a CDP hearing request directed to both notices.

Petitioner asserted that he had filed an amended 2010 tax return and that the IRS had improperly rejected it. The SO explained that any tax deficiency for 2010 was separate from the current CDP case, which deals solely with the collection actions directed to petitioner's restitution obligation. The SO noted that she had jurisdiction only with respect to the levy and lien notices concerning that RBA liability.

Petitioner stated that he had previously submitted an offer-in-compromise (OIC) and had provided supporting financial documents to another IRS officer. The SO explained that, while she could entertain a request for an installment agreement, she could not consider an OIC for a restitution-based liability imposed by a sentencing court. As to an installment agreement, the SO reiterated that she could consider such an alternative only if petitioner submitted a fully completed Form 433–A.

On May 21, 2021, the SO secured documents relating to petitioner's criminal conviction, including Form 14104 listing the court-ordered restitution. The SO verified that the RBA matched that number. After consulting the Internal Revenue Manual, the SO confirmed that petitioner could not challenge his underlying liability for the RBA and that he was ineligible for an OIC.

On July 15, 2021, the SO called petitioner to explain her findings. She reiterated that she could not consider an OIC and could consider another collection alternative only if he submitted Form 433-A, which he had not done. Petitioner repeated the arguments he had made previously, chiefly contending that he had not received the levy and lien notices. He urged that the lien notice was invalid because the IRS had filed the NFTL before issuing that notice to him. The SO explained that a lien notice must be issued, not before the IRS makes an NFTL filing, but "not more than 5 business days after the day of [such a] filing." § 6320(a)(2).

Having received no further information from petitioner, the SO closed the case. On July 29, 2021, the IRS sent him a notice of determination sustaining the NFTL filing and the proposed levy. He timely petitioned this Court for review.

In September 2022 petitioner filed a Motion for Summary Judgment urging that the IRS should be sanctioned "for their willful negligence and deliberate failure to apply the appropriate IRS

[*6] Administrative Laws." He contends that the IRS failed to verify that the RBA was accurate and that "proper notices of deficiencies" were issued "before executing levies, liens and judgments." Respondent timely objected to the Motion and filed a Cross-Motion for Summary Judgment. Further briefing ensued.

## *Discussion*

### I.     *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. However, the nonmoving party may not rest upon mere allegations or denials of his pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); *see Sundstrand Corp.*, 98 T.C. at 520.

Petitioner's filings devote little attention to the issues actually raised in respondent's Cross-Motion for Summary Judgment. His submissions consist largely of cut-and-pasted text, cast in boilerplate legalese, much of which seems to have been downloaded from the internet. He does not allege any genuine dispute of material fact, and we find the case appropriate for summary adjudication.

### II.     *Restitution Background*

Section 6201(a)(4)(A) provides that "[t]he Secretary shall assess and collect the amount of restitution under an order pursuant to section 3556 of title 18, United States Code, for failure to pay any tax imposed under this title in the same manner as if such amount were such tax." The IRS may not make such an assessment until the defendant has exhausted all appeals and the restitution order has become final. *See* § 6201(a)(4)(B). Congress has exempted RBAs from the usual period of limitations on assessment. *See* § 6501(c)(11) ("[Criminal restitution] may be assessed, or a proceeding in court for the collection of such amount may be begun without assessment, at any time."); *Carpenter v. Commissioner*, 152 T.C. 202, 210 (2019), *aff'd*, 788 F. App'x 187 (4th Cir. 2019).

**[\*7]** The usual restrictions on assessment imposed by section 6213 likewise do not apply to RBAs. *See* § 6213(b)(5). The IRS is not required to send the taxpayer a notice of deficiency before making an assessment of this kind. *See Klein v. Commissioner*, 149 T.C. 341, 352 (2017); *Ervin v. Commissioner*, T.C. Memo. 2021-75, 121 T.C.M. (CCH) 1557, 1559; *Rozin v. Commissioner*, T.C. Memo. 2017-52, 113 T.C.M. (CCH) 1230, 1233 (noting that the IRS is "permitted to immediately assess, without issuing a statutory notice of deficiency, and collect, as if it were a tax, the restitution ordered" by a sentencing court).

The IRS properly followed these procedures here. After petitioner had exhausted all appeals, the IRS assessed the restitution ordered by the sentencing court. And the IRS assessed no additions to tax or underpayment interest in connection with the RBA. *See Klein*, 149 T.C. at 361–62 (holding that section 6201(a)(4) does not authorize the IRS to assess, upon the amount of restitution ordered by the sentencing court, underpayment interest or additions to tax). The IRS is authorized to pursue collection action on an RBA at any time. Contrary to petitioner's view, it is immaterial whether the IRS issued him a notice of deficiency for 2010 because this type of assessment is separate and distinct from any civil examination of his 2010 return.

III.  *Standard of Review*

Sections 6320(c) and 6330(d)(1) do not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. The general parameters for such review are marked out by our precedents. Where the validity of a taxpayer's underlying liability is properly at issue, we review the IRS's determination de novo. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). Where the taxpayer's underlying liability is not properly before us, we review the IRS's determination for abuse of discretion only. *Jones v. Commissioner*, 338 F.3d 463, 466 (5th Cir. 2003); *Goza*, 114 T.C. at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006).

A taxpayer may challenge his underlying tax liability at a CDP hearing only if he "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity" to dispute it. § 6330(c)(2)(B). And a taxpayer is precluded from advancing an underlying liability challenge in this Court "if it was not properly raised in

**[\*8]** the CDP hearing." *Thompson v. Commissioner*, 140 T.C. 173, 178 (2013); *see Giamelli v. Commissioner*, 129 T.C. 107, 114 (2007).

Petitioner's underlying liability consists of the restitution-based assessment that the IRS has made. *See Klein*, 149 T.C. at 349. Section 6201(a)(4), which governs such assessments, provides that "[t]he amount of such restitution may not be challenged by the person against whom assessed on the basis of the existence or amount of the underlying tax liability in any proceeding authorized under this title." § 6201(a)(4)(C); *see Carpenter*, 152 T.C. at 219 ("A taxpayer is strictly prohibited from challenging the existence or amount of an underlying tax liability that is related to an order of criminal restitution.") Because petitioner is precluded from challenging his RBA liability, we review the SO's actions for abuse of discretion only. *See Carpenter*, 152 T.C. at 220–21; *Klein*, 149 T.C. at 348.[3]

IV.    *Analysis*

In deciding whether the SO abused her discretion in sustaining the proposed collection actions, we consider whether she (1) properly verified that the requirements of applicable law or administrative procedure were met, (2) considered relevant issues petitioner raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of [petitioner] that any collection action be no more intrusive than necessary." § 6330(c)(3); *see* § 6320(c). Our review of the record establishes that the SO properly discharged all of her responsibilities under these provisions.

The SO verified that petitioner's restitution obligation had been properly assessed. She secured documentation from his criminal case and confirmed that the amount of the RBA matched the amount shown on Form 14104, which specified the court-ordered restitution. We are satisfied that she properly discharged her duty to verify the propriety of the assessment. *See* § 6330(c)(1); *Jordan v. Commissioner*, 134 T.C. 1, 12 (2010), *supplemented by* T.C. Memo. 2011-243.

---

[3] Petitioner seeks to challenge his 2010 tax liability on the ground that he submitted an amended return that the IRS did not accept. As explained in the text, petitioner's restitution-based liability, which is collected "as if such amount were such tax," *see* § 6201(a)(4)(A), is distinct from his civil tax liability for 2010, *see Klein*, 149 T.C. at 359, 361; *Rozin*, 113 T.C.M. (CCH) at 1233. Section 6201(a)(4)(C) explicitly prohibits petitioner from challenging "[t]he amount of such restitution."

**[\*9]**    The SO likewise verified that the levy and lien notices were sent by certified mail to petitioner's "last known address." *See* §§ 6320(a)(2)(C), 6331(d)(2)(C).  The levy notice, dated December 29, 2020, was mailed to petitioner's Coatbridge address, which he listed on his change-of-address form.  The record includes a copy of the levy notice with attached U.S. Postal Service Form 3811, Domestic Return Receipt, indicating that it was sent by certified mail and was signed for and received by petitioner on January 14, 2021.  Although he complains that the levy notice "was not handed to him," such personal service is not required.  *See* § 6331(d)(2).

The lien notice, dated December 15, 2020, was mailed to petitioner's Abbyville address, which was his last known address as of December 5, 2020, when he filed his change-of-address form.  The SO investigated this question and determined that petitioner's address did not update in the IRS computer system until after the compliance officer had requested that the Letter 3172 (lien notice) be issued.  The SO accordingly concluded that the Abbyville address was "appropriate to use" for this purpose.  We agree that the Abbyville address was petitioner's last known address for purposes of issuing that document.  *See Minemyer v. Commissioner*, T.C. Memo. 2012-325, 104 T.C.M. (CCH) 616, 618 ("When determining whether the Commissioner mailed a notice to a taxpayer's last known address, the relevant inquiry is what the Commissioner knew at the time the notice was issued . . . ." (citing *Pyo v. Commissioner*, 83 T.C. 626, 633 (1984))).

In any event, it is obvious that petitioner received both notices because he filed a timely request for a CDP hearing in which he explicitly challenged both collection actions.  Even if the lien notice were thought to have been mistakenly mailed to the Abbyville address, any error would thus be harmless.  *See Miccosukee Tribe of Indians of Fla. v. Commissioner*, T.C. Memo. 2015-216, 110 T.C.M. (CCH) 446, 448 ("Minor defects may be overlooked where the taxpayer knows of and pursues the right to administrative and judicial review."); *Call v. Commissioner*, T.C. Memo. 2005-289, 90 T.C.M. (CCH) 601, 607, *aff'd*, 230 F. App'x 758 (9th Cir. 2007); *Stein v. Commissioner*, T.C. Memo. 2004-124, 87 T.C.M. (CCH) 1358, 1364 ("Because the [CDP] hearing had been timely requested within the prescribed 30-day period, petitioner's claims that respondent did not send Letter 3172 to petitioner's last known address and that petitioner never received it are beside the point.")

In a related vein, petitioner asserts that no "30-Day Notice" demanding payment of his RBA liability was sent to him before the IRS

**[\*10]** filed the NFTL in December 2020. But the record shows that the IRS issued petitioner at least two prior demands for payment, in November 2019 and October 2020. And as the SO explained, the IRS is required to issue a lien notice, not before filing an NFTL, but "not more than 5 business days after" such a filing. *See* § 6320(a)(2).[4]

During the CDP hearing petitioner contended that the Abbyville residence was his wife's property and that she was entitled to "innocent spouse" relief. The SO pressed him about ownership of that property, noting that he had listed the Abbyville address as the business address for several entities of which he was the sole member. When the SO asked him "to submit documents to verify [ownership], he would not agree." As for the innocent spouse claim, the SO correctly concluded that this CDP case concerns petitioner's RBA liability alone and that his wife would need to pursue separately any innocent spouse claim she might have. *See* Treas. Reg. § 1.6015-5(a) (stating that, to be eligible for relief from joint and several liability, a taxpayer must first submit IRS Form 8857, Request for Innocent Spouse Relief).

Finally, the SO correctly determined that petitioner was ineligible for a collection alternative. An RBA liability, based on court-ordered restitution, cannot be compromised by the IRS under section 7122. *See* § 6201(a)(4)(C); *Carpenter*, 152 T.C. at 213 (citing 18 U.S.C. § 3664(o)) (ruling that, once a restitution order has become a final judgment, it cannot be modified absent enumerated statutory exceptions). Although petitioner might have offered to pay his RBA liability under an installment agreement, he made no such proposal. And he declined to submit Form 433–A or supply the financial information necessary to determine whether he would be entitled to such an alternative. *See Coleman v. Commissioner*, T.C. Memo. 2010-51, 99 T.C.M. (CCH) 1213, 1215, *aff'd*, 420 F. App'x 663 (8th Cir. 2011).

Petitioner advances a potpourri of other arguments, including the assertion that the IRS should have credited against his RBA liability a $133,588 tax payment he made to the State of Maryland in 2011. We have considered these arguments and find them to be irrelevant,

---

[4] Petitioner contends that the SO abused her discretion because the IRS "must wait a total of 45 days after issuing the Letter 1058 before taking levy action." *Cf.* § 6331(d)(2) (requiring that the IRS give notice of intent to levy no fewer than 30 days before levying on property). But the IRS has not yet taken any "levy action." The SO sustained only the notice of *proposed* levy. The IRS may not actually levy on petitioner's property to collect the RBA until petitioner has exhausted his judicial remedies.

**[\*11]** frivolous, or otherwise without merit.  Finding no abuse of discretion in any respect, we will deny petitioner's Motion for Summary Judgment, grant respondent's Cross-Motion, and sustain the proposed collection actions.

To reflect the foregoing

*An appropriate order and decision will be entered.*