# United States Tax Court

T.C. Memo. 2026-52

JON B. NOVAK,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

———————

Docket No. 7365-24L.                                                                    Filed June 17, 2026.

———————

*Heather S. Voegele Anson*, for petitioner.

*Christina L. Holland* and *Joline M. Wang*, for respondent.


## MEMORANDUM OPINION

JENKINS, *Judge*: Petitioner timely filed a Petition under sections 6320(c)[1] and 6330(d)(1), requesting that this Court review a Notice of Determination Concerning Collection Actions Under IRS Sections 6320 or 6330 of the Internal Revenue Code (NOD) sustaining the filing of a Notice of Federal Tax Lien (NFTL) for the 2017, 2018, and 2019 tax years. The NOD, which rejected petitioner's proposed installment agreement, was issued to petitioner by an Appeals officer (AO) in the Internal Revenue Service (IRS) Independent Office of Appeals (Appeals) after a collection due process (CDP) hearing. Respondent filed a Motion for Summary Judgment (Motion) pursuant to Rule 121, contending that it was not an abuse of discretion for the AO to reject petitioner's installment agreement and sustain the NFTL filing.

———————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[*2] Petitioner's Response to Motion for Summary Judgment (Response) argues that there are genuine disputes of material fact. However, this Court concludes otherwise and finds that the AO did not abuse his discretion in sustaining the NFTL filing and rejecting petitioner's installment agreement offer. This Court will thus grant the Motion.

*Background*

The following facts are based on the parties' pleadings and Motion and Response papers, including the Exhibits attached thereto, as well as the Administrative Record. *See* Rules 93, 121(c). The facts are stated solely for the purpose of ruling on the Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). Petitioner resided in Nebraska when the Petition was filed.

I.     *Underlying Liabilities and Pre-CDP Interactions*

Petitioner timely filed federal income tax returns with his spouse for the 2017, 2018, and 2019 tax years, which were selected for examination. The examination was resolved as agreed. On February 27, 2023, the IRS assessed additional tax as well as interest for tax years 2017, 2018, and 2019. The amounts assessed were as follows:

| Year | Tax | Interest |
|------|-----------|----------|
| 2017 | $354,503 | $62,213 |
| 2018 | 893,629 | 114,342 |
| 2019 | 268,640 | 26,052 |

In the meantime, at the conclusion of the examination, petitioner requested an installment agreement, providing the IRS with an undated Form 9465, Installment Agreement Request, and Form 433–F, Collection Information Statement, dated December 29, 2022. The Form 433–F reflected more than $15 million in bank and brokerage accounts, one stock worth almost $10 million, and another worth $50 million. It also reflected net equity in petitioner's primary residence of over $2 million and net equity in another piece of real property of almost $1 million.

On the basis of the Form 433–F, the IRS Collection function (Collection) determined that petitioner had sufficient ability to pay the tax liabilities. According to Collection notes, a revenue officer (RO) had a discussion with a representative for petitioner on October 4, 2023, in

**[\*3]** which he conveyed that it appeared that petitioner had the ability to fully pay his liabilities, such that an installment agreement would not be granted. The RO further explained that if petitioner did not fully pay the liabilities in short order, an NFTL would be filed.

Collection notes indicate that a request to file an NFTL was made on October 6, 2023. They also reflect a response to the request from the IRS Automatic Lien System on October 11, 2023. IRS account transcripts, including those in the Administrative Record, indicate "Federal Tax Lien has been filed for this tax period" and "lien placed on assets" on October 20, 2023. *See* Internal Rev. Serv., Section 8A – Master File Codes, https://www.irs.gov/pub/irs-6209/section_8a_2023_redacted .pdf (last visited June 9, 2026). They also reflect that a notice of lien filing and right to CDP hearing was issued on October 24, 2023. The Administrative Record contains a partially legible Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (CDP Notice), dated October 24, 2023, which states "Certified Mail," sets forth a number, and indicates that an NFTL was filed on October 24, 2023. The Administrative Record also contains a partially legible copy of Form 668 (Y)(c), Notice of Federal Tax Lien, indicating that it was prepared and signed sometime in October 2023. These documents were apparently submitted by petitioner with his Form 12153, Request for a Collection Due Process or Equivalent Hearing.

II.    *CDP Hearing Request*

According to Collection notes, petitioner originally submitted Form 12153, referring to a levy, which was not processable because a levy notice had not yet been issued. The notes show that the RO informed petitioner's representative of this on November 29, 2023; she indicated that she would correct it and resubmit. They state that on the same day, the RO received an updated Form 12153 with respect to the NFTL filing, which was forwarded to Appeals on December 4, 2023. The transmittal information shows November 30, 2023, as the "L3172 File by Date," i.e., the deadline for petitioner to file a CDP hearing request. Petitioner's Form 12153 dated November 17, 2023, and marked as received by Collection on November 29, 2023, lists his income tax liabilities for tax years 2017, 2018, and 2019 as the periods at issue, indicates that he is unable to pay in full and would like a collection alternative, and requests an installment agreement be considered as a proposed collection alternative. Petitioner did not dispute the underlying tax liabilities. According to petitioner, notice of rejection of petitioner's installment agreement was provided in December 2023.

[*4] III.   *CDP Hearing*

The AO began working on petitioner's request on December 19, 2023, confirming that he had had no prior involvement with petitioner for the types of taxes at issue and the 2017, 2018, and 2019 tax years. He noted that the assessments resulted from an agreement after examination. On December 20, 2023, the AO sent petitioner a letter scheduling a telephone CDP hearing for January 23, 2024. In this letter, the AO requested additional financial information from petitioner to be taken into consideration for collection alternatives, including information about all stocks petitioner owned, information about the two brokerage accounts listed on petitioner's Form 433–F, and documentation to support valuation of the two stocks listed thereon. The AO further indicated in the letter that petitioner had 14 days from the date of the letter to provide this information if petitioner wanted it to be considered for a collection alternative.

In a phone call on January 3, 2024, petitioner's representative requested additional time to submit information. Petitioner's representative stated that petitioner's financial circumstances had changed and that petitioner could not pay the liabilities as Collection had determined. The AO requested the financial information by the date of the CDP hearing, but it was not provided.

The AO and petitioner's representative participated in the telephone CDP hearing on January 23, 2024, and petitioner's representative indicated that petitioner planned on selling a portion of his business in March 2024 and using the proceeds of that sale to pay the liabilities. The AO noted that the financial information he had showed that petitioner could pay the liabilities from existing assets, but petitioner's representative disagreed, asserting that petitioner had liquidated assets to address a cash shortage in his business. Petitioner's representative explained, in response to further questions, that she was unclear about the status of petitioner's stock holdings and equity in real property. Accordingly, the AO requested that petitioner provide Form 433–A (OIC), Collection Information Statement for Wage Earners and Self-Employed Individuals, brokerage account statements, mortgage statements, information supporting the liquidation of assets and transfer to petitioner's business, and the additional information already requested. The AO allowed until January 26, 2024, to provide the information. During the hearing, petitioner's representative also inquired about the possibility of a reduction of interest but was told by the AO that statutory interest abatement would be possible only in the

[*5] case of penalty relief due to reasonable cause. The representative also asked about the possibility of an offer-in-compromise and was told by the AO that one could be submitted but that it was unlikely to be accepted on the basis of assets previously reported.

On January 26, 2024, petitioner's representative called to request an extension, and the AO provided an extension to February 6, 2024, for petitioner to provide the additional information requested. Petitioner made no additional contact with the AO to provide the requested information.[2] Accordingly, on February 28, 2024, the AO decided to sustain the NFTL filing. The AO issued the NOD on March 27, 2024.

IV.    *NOD*

The NOD indicates that the AO had no prior involvement with the relevant tax periods for petitioner. It also states that the AO verified that the requirements of any applicable law or administrative procedure were met. Specifically, it states that IRS records reflect the proper issuance of the notice and demand, NFTL filing, and notice of a right to a CDP hearing. It also states that assessments were properly made for each tax period because petitioner had agreed to the IRS's assessments after the examination, that notice and demand was made to petitioner's last known address, and that there was a balance due at the time of filing the NFTL. The NOD explains that it was determined that petitioner had the ability to fully pay his liabilities from equity in assets, and he did not provide evidence to support his claim otherwise. It further explains that petitioner did not provide evidence to support his claim that he no longer had the ability to fully pay his liabilities from equity in assets because of a pending divorce and his investments into his business. The NOD also notes that petitioner did not provide evidence to support his claim that he would liquidate a portion of his business to pay his personal liabilities, and his liabilities remained unpaid. Accordingly, the NOD explained, the NFTL filing was not intrusive and merely protected the government's interest.

---

[2] Although petitioner disputes that neither he nor his representative made additional contact, he adds that no additional contact was made before February 6, 2024, without elaborating as to when additional contact may have been made. That summary denial does nothing to support the idea that there is a genuine dispute of material fact with respect to the timeline of interactions between petitioner and Appeals in this case. *See* Rule 121(d).

**[*6]** *Discussion*

I. *Summary Judgment Standard*

Summary judgment serves to "expedite litigation and avoid unnecessary and expensive trials." *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). Either party may move for summary judgment regarding all or any part of the legal issues in controversy. Rule 121(a)(1). In the U.S. Court of Appeals for the Eighth Circuit, to which appeal of this case would presumptively lie, *see* § 7482(b)(1)(G)(i), review of CDP determinations for abuse of discretion is limited to the administrative record, *see Robinette v. Commissioner*, 439 F.3d 455, 461–62 (8th Cir. 2006), *rev'g* 123 T.C. 85 (2004). In cases in which judicial review is based solely on the administrative record, a motion for summary judgment and any response in opposition must include a statement of facts with references to the administrative record. Rule 121(j).

In deciding whether to grant summary judgment, the Court considers factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. The nonmoving party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Respondent argues in the Motion that the allegations of error set forth in the Petition do not raise a genuine issue of material fact. In the Response, petitioner raises disputes with respect to whether the Administrative Record supports respondent's position that there was no abuse of discretion. However, for the reasons discussed in more detail herein, this Court finds, on the basis of the record before it, that this case is appropriate for summary adjudication.

II. *Standard for Review*

If the underlying tax liability is not at issue, the Court reviews Appeals' determination for abuse of discretion. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). In reviewing for abuse of discretion, the Court does not substitute its judgment for that of Appeals; rather, the Court's review is limited to determining whether Appeals' decision was arbitrary, capricious, or without sound basis in fact or law. *Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir.

**[\*7]** 2006). Throughout the course of his interactions with Appeals, petitioner did not raise any dispute as to the underlying liabilities other than an initial inquiry as to whether interest could be abated. And petitioner has not disputed even the interest to this Court, raising no dispute to the underlying liabilities in the Petition. Accordingly, this Court will review the AO's determination for abuse of discretion. In conducting this review, this Court looks to the reasons offered in the NOD and other documents in the Administrative Record, such as case activity notes. *See Serna v. Commissioner*, T.C. Memo. 2022-66, at *8; *see also Kasper v. Commissioner*, 150 T.C. 8, 24–25 (2018).

III.    *Evaluation of Appeals' Determination*

This Court considers whether the AO (1) properly verified that the requirements of any applicable law or administrative procedure were met; (2) considered any relevant issues that petitioner raised; and (3) considered whether the proposed collection action balanced the need for the efficient collection of taxes with the legitimate concern of petitioner that any collection action be no more intrusive than necessary. *See* §§ 6320(c), 6330(c).

A.    *Verification*

This Court has authority to review satisfaction of the verification requirement regardless of whether the taxpayer raised that issue at the CDP hearing. *See Hoyle v. Commissioner*, 131 T.C. 197, 202–03 (2008), *supplemented by* 136 T.C. 463 (2011). This Court concludes, from a review of the Administrative Record, that the AO conducted a thorough review of the record and verified that all applicable requirements were met. Accordingly, this Court concludes that there was no abuse of discretion with regard to the verification requirement.

In the case of a failure to pay a tax liability after demand for payment, section 6321 imposes a lien in favor of the United States upon all property and rights to property of the taxpayer liable for the tax. The lien generally arises at the time the tax is assessed. § 6322. However, the lien is not valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until an appropriate NFTL is filed. § 6323. The taxpayer must be notified in writing of the filing of an NFTL not more than five business days after the filing. § 6320(a)(1) and (2).

Petitioner disputes satisfaction of the requirement in section 6320(a)(2) that the CDP Notice be issued not more than five business

[*8] days after the day of the filing of the NFTL. Petitioner first asserts that a "review of the actual documents in the administrative record demonstrates that the tax lien was issued on October 11, 2023," then more reasonably states that the lien paperwork was prepared on October 11, 2023.[3] Petitioner further argues that there is no proof of the actual lien filing date, that the CDP Notice was not prepared until October 24, 2023, and that there is no proof that the CDP Notice was ever actually mailed to petitioner. Petitioner also asserts that there is no allegation by respondent that a CDP notice was sent to petitioner within five business days. Accordingly, petitioner argues, there is a genuine issue of material fact as to whether petitioner has been deprived of his due process rights[4] and whether the AO abused his discretion by failing to verify compliance with applicable law. In support thereof, petitioner miscites a ruling by the U.S. District Court for the District of Kansas concluding that it could not grant the Government's motion to dismiss a taxpayer's action under section 6320 because the Government had not provided evidence that the taxpayer received CDP notices. *See Allington v. IRS*, No. 02-1153, 2003 U.S. Dist. LEXIS 2127, at *6–7 (D. Kan. Jan. 8, 2003).[5]

However, IRS account transcripts indicate that the NFTL was filed on October 20, 2023, and that the CDP Notice was issued on October 24, 2023. Collection notes indicating steps preparatory to the NFTL filing in October 2023, together with a date in the month for preparation and signing of the NFTL, do not contradict the dates reflected in the Administrative Record for the filing thereof. *See Kelly v. Commissioner*, T.C. Memo. 2022-73, at *7 n.3 (noting that the date that the NFTL indicates that it was prepared and signed is irrelevant to the question of the date on which it was filed). The copy of the CDP Notice in the Administrative Record indicates that it was issued on October 24,

---

[3] Given that the copy of the NFTL in the Administrative Record was apparently submitted by petitioner with his CDP hearing request, petitioner presumably has a more legible copy that reflects that it was prepared and signed on October 11, 2023.

[4] In arguing that the Fifth Amendment to the U.S. Constitution may be implicated, petitioner does not address the fact that the lien arose automatically under section 6321.

[5] The district court recognized that the Tax Court "presumably knows far more about tax law and regulations than this Court," *Allington v. IRS*, 2003 U.S. Dist. LEXIS 2127, at *5, directed the Government to a different motion to file, *id.* at *7, and subsequently dismissed the case for lack of jurisdiction over any CDP case, *Allington v. IRS*, No. 02-1153, 2003 U.S. Dist. LEXIS 9887, at *2–3 (D. Kan. Apr. 10, 2003).

[*9] 2023, and that the NFTL was filed on the same date.[6] And although the October 24 NFTL filing date is not the same as the October 20 date reflected on the transcripts, it is within five business days of it, such that the five business day requirement would be satisfied with respect to either NFTL filing date. The CDP Notice has a certified mail tracking number, and the fact that petitioner filed a timely CDP hearing request corroborates the actual mailing of the CDP Notice. *Cf. Allington v. IRS*, 2003 U.S. Dist. LEXIS 2127, at *6 ("[The] protestation that he did not receive the notice seems highly suspect in light of the fact that he requested a hearing . . . .").

In a similar circumstance, in which the IRS transcript reflected a date of NFTL filing within five business days before the date of a Letter 3172 and its stated date of NFTL filing, the Court similarly rejected the taxpayer's argument that Appeals had not properly verified the requirements of section 6320(a). *See Kelly*, T.C. Memo. 2022-73, at *7. And the Court has held that when a CDP hearing was timely requested, the taxpayer's "claims that [the IRS] did not send Letter 3172 . . . are beside the point." *Stein v. Commissioner*, T.C. Memo. 2004-124, 2004 WL 1147066, at *9; *see also Call v. Commissioner*, T.C. Memo. 2005-289, 2005 WL 3446280, at *8–9 (dismissing the taxpayer's claim that no CDP notice had been issued given his timely filing of a CDP hearing request), *aff'd*, 230 F. App'x 758 (9th Cir. 2007). Accordingly, petitioner's inconsistent claims about the dates reflected in the Administrative Record and the lack of affidavits by respondent in support thereof do not raise a genuine dispute of material fact concerning IRS compliance with section 6320(a)(2) or Appeals' verification thereof.

B.    *Other Issues Petitioner Raised*

1.    *Timing of NFTL Filing*

In the Response, petitioner argues that a genuine issue of material fact exists regarding whether his due process rights were violated by the filing of the NFTL before the rejection of the proposed installment agreement. The Response further argues that filing of the NFTL before rejection of a contemplated resolution between the parties made it impossible for petitioner to take actions necessary to obtain

---

[6] The deadline given for the CDP hearing request filing is also consistent with the issuance of the CDP Notice on October 24, 2023. The November 30, 2023, deadline is the end of the 30-day period beginning November 1, 2023, and that period began on the day after the five business day period that ran October 25–31, 2023. *See* § 6320(a)(2)(C), (3)(B).

[*10] funds to pay the liabilities and caused significant damage to petitioner and his business. This argument seems to be an expansion of the assertions in the Petition that petitioner was denied his due process rights and that the tax lien prevented petitioner from obtaining loans on his property interests, as well as the suggestion that the timing of the installment plan rejection vis-à-vis the NFTL filing is unreasonable. However, although petitioner argues that his Form 12153 raises due process issues, he does not dispute that the Form 12153 in the Administrative Record is the one he submitted, and it raises no such issues. And the AO's notes indicate that the arguments raised during the CDP hearing focused on collection alternatives. Thus, petitioner does not seem to have presented this issue to Appeals and would thus be precluded from presenting it to this Court. *See* Treas. Reg. § 301.6320-1(f)(2), Q&A-F3.

In any event, petitioner's argument holds no water. The Internal Revenue Manual (IRM) instructs IRS employees that although the intention to recommend rejection of an installment agreement should be communicated to a taxpayer, actual rejection of agreements must not be conveyed before independent administrative review. IRM 5.14.1.4(11) (Mar. 31, 2023).[7] It also instructs that enforcement action may not be taken while installment agreements are pending. *Id.* However, it also specifically provides that NFTLs generally should be filed in connection with installment agreements to ensure the government's interest is protected. *See* IRM 5.14.1.4.3(1)(a) (Dec. 23, 2022); *see also* IRM 5.14.1.4.3(2) (noting that NFTLs may be filed while installment agreements are pending and during the rejection process); IRM 5.12.2.6(1) (Oct. 14, 2013) (providing that an NFTL should generally be filed if the aggregate unpaid balance of assessments is $10,000 or more). It instructs that taxpayers should be advised in advance about the plan to file an NFTL and given an opportunity to make full payment. IRM 5.14.1.4.3(1)(b). The RO followed the protocol set forth in the IRM by conveying the intent to reject the installment agreement before the rejection was actually effected, as well as by indicating that an NFTL would be filed and providing petitioner an opportunity to fully pay his liabilities before that. It is generally not an abuse of discretion to follow IRM guidelines. *Cf. Mission Organic Ctr., Inc. v. Commissioner*, Nos. 6937-23L, et al., 165 T.C., slip op. at 10 (Dec. 16, 2025). Petitioner had an opportunity to avoid the NFTL filing by fully paying the liabilities, and he had the opportunity to dispute the

---

[7] Citations herein are to provisions of the IRM as in effect during the IRS's consideration of petitioner's case.

[*11] NFTL filing after the fact through the CDP process. He also had the opportunity to request withdrawal of the NFTL, potentially invoking section 6323(j)(1)(C), given his claim that the NFTL impeded his ability to liquidate assets to pay his liabilities. *See* IRM 5.12.9.4 (Sep. 6, 2019); *see also* Form 12277, Application for Withdrawal of Filed Form 668(Y), Notice of Federal Tax Lien. Accordingly, petitioner's rights were not violated.

### 2. *Reasonableness of Appeals Consideration Timeline*

Appeals will attempt to conduct a CDP hearing and issue a notice of determination as expeditiously as possible under the circumstances of each situation. Treas. Reg. § 301.6320-1(e)(3), Q&A-E9. Consistent with that regulation, there is no required minimum length of time that Appeals must provide a taxpayer before making a determination regarding a collection action. *See Scanlon v. Commissioner*, T.C. Memo. 2018-51, at *24–25; *Shanley v. Commissioner*, T.C. Memo. 2009-17, 2009 WL 195929, at *5. Nevertheless, the AO gave petitioner multiple extensions to provide the requested updated financial information, ultimately formally allowing more than a month and a half from the initial contact. Even after the extended deadline, he did not issue the NOD for more than another month, giving petitioner almost three months from the first request for additional information to gather and provide it. And that was after petitioner had been on notice since submitting his CDP hearing request in November 2023 that he would need to substantiate his need for an installment agreement. *Cf. Shanley v. Commissioner*, 2009 WL 195929, at *6 (taking into account the amount of time from a taxpayer's request for a CDP hearing until when the notice of determination was issued in determining whether Appeals provided the taxpayer a reasonable amount of time to provide financial information). Petitioner failed to avail himself of the many opportunities provided to supply the information that was necessary for the AO to determine whether an installment agreement was necessary to facilitate collection of petitioner's liabilities. And it is not an abuse of discretion "to move forward with a determination after receiving no communication from the taxpayer" who has been given sufficient time to respond. *Powell v. Commissioner*, T.C. Memo. 2023-48, at *6. For these reasons, this Court concludes that it was not an abuse of discretion for the AO to issue the NOD sustaining the NFTL when he did.

**[\*12]**     3.    *Appropriateness of Rejection of Installment Agreement*

Section 6159(a) authorizes installment agreements with taxpayers to facilitate collection of the taxpayers' liabilities, and these agreements are within the discretion of the IRS. *See* Treas. Reg. § 301.6159-1(a). IRM 5.14.1.4(5) directs that if a taxpayer can fully or partially satisfy balance due accounts by withdrawing cash, liquidating securities or borrowing against the value of securities holdings, borrowing on equity in real or personal property, or selling real or personal property, then Appeals should request full or partial payment be made by conversion of assets or other liquid assets. The Court has consistently held that it is not an abuse of discretion for Appeals to reject an installment agreement because a taxpayer refuses to liquidate assets to satisfy his or her tax liability. *See Scanlon*, T.C. Memo. 2018-51, at \*23 (collecting cases).

In the Petition, petitioner disagrees with the finding that he had the ability to fully pay his liabilities from his equity in assets. In the Response, he argues that the stock reported as having a value of $50 million represented an interest in a business and therefore reflected no liquidity. He also argues that Appeals did not take into account loans against the assets and other outstanding debts, because those amounts are not required to be and therefore were not reflected on Form 433–F. However, petitioner suggested to Appeals that he be permitted to sell some of the business to generate the cash necessary to pay his tax liabilities, contradicting the claim of no liquidity. Furthermore, the net equity that petitioner reported just in real property exceeded the amount of his liabilities, contradicting his claim that failure to take into account debts tainted the financial analysis.

In any event, in response to petitioner's representative's assertion that there had been a change in petitioner's ability to pay the liabilities, the AO repeatedly requested financial documentation. Petitioner failed to produce any financial documentation that would have borne out his claims. The Court has consistently ruled that it is not an abuse of discretion for Appeals to reject a collection alternative because a taxpayer fails to provide additional financial information that Appeals requests during the Appeals process. *See Orum v. Commissioner*, 123 T.C. 1, 13 (2004), *aff'd*, 412 F.3d 819 (7th Cir. 2005); *see also Scanlon*, T.C. Memo. 2018-51, at \*24 (collecting cases).

**[\*13]** As all evidence provided to Appeals indicated that petitioner had the ability to pay the liabilities from assets, it was not an abuse of discretion for Appeals to reject petitioner's request for an installment agreement.

### C.     *Balancing Analysis*

Petitioner argues in the Response that because the AO did not provide a rationale for rejecting the proposed extension until March 2024 to allow petitioner time to sell his business, the NOD does not demonstrate whether any proposed collection action balances the need for the efficient collection of taxes with petitioner's legitimate concern that any collection action be no more intrusive than necessary. *See* §§ 6320(c), 6330(c)(3)(C). However, the AO concluded in the NOD that the filing of the NFTL balanced the need for efficient tax collection with petitioner's concern about intrusiveness because petitioner did not provide any support for the assertion that he could not immediately pay his liabilities and needed an extension. Also, the AO did not issue the NOD until almost the end of the month during which petitioner had indicated that he would sell his business, leaving him ample opportunity to at least provide the information requested by the AO, if not also information about the posited sale. Given petitioner's posture before the AO, this Court concludes that there was no abuse of discretion in the AO's determination.

### IV.     *Conclusion*

Finding no abuse of discretion, this Court will grant the Motion and sustain Appeals' determination to sustain the filing of the NFTL to facilitate collection of petitioner's unpaid liabilities for the 2017, 2018, and 2019 tax years. This Court has considered all arguments made by the parties and, to the extent they are not addressed herein, deems them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*An appropriate order and decision will be entered.*